ESTATE OF PAULINE E. BULLARD, DECEASED, VICTOR M. BULLARD, EXECUTOR, AND VICTOR M. BULLARD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24933-83.      Filed July 31, 1986.

---

Victor M. Bullard, pro se.
*Erin Collins*, for the respondent.

OPINION

COHEN, *Judge*: Respondent determined deficiencies in Victor M. and Pauline E. Bullard's Federal income taxes for 1978 and 1979 of $2,397 and $8,647, respectively. The only issue for decision is the availability of a charitable contribution deduction under section 170[1] with respect to the "bargain sale" of certain appreciated capital gain property.

The parties submitted this case fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure.

Victor M. and Pauline E. Bullard filed joint Federal income tax returns for 1977, 1978, and 1979 with the Internal Revenue Service Center in Fresno, California. Pauline E. Bullard died on April 30, 1982, and Victor M. Bullard, a resident of Palm Desert, California, is executor of her estate. The term "petitioners" herein refers to Victor and Pauline Bullard or to Victor Bullard and the Estate of Pauline Bullard, as appropriate.

On May 24, 1977, petitioners sold their interest in Weimar Medical Center (Weimar) to the Hewitt Research Center (Hewitt), a nonprofit corporation affiliated with the Seventh-Day Adventist Church. Weimar included both "capital gain property" as defined in section 170(b)(1)(C)(iv) and "ordinary income property" as defined in section 1.170A-4(b)(1), Income Tax Regs. To reflect the previous transfer of an interest in Weimar from petitioners to Ureeken and Lakeport Hospital, Ureeken and Lakeport Hospital received a portion of the proceeds from the sale of Weimar. The following table summarizes petitioners' sale of Weimar to Hewitt:

| | Capital gain property | Ordinary income property | Total |
|---|---|---|---|
| Fair market value | | | $1,325,000 |
| Less: Portion attributable to Ureeken and Lakeport Hospital | | | 150,000 |
| Fair market value Petitioners' interest | $1,106,478 | $68,522 | 1,175,000 |

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during 1977 through 1979.

|  | Capital gain property | Ordinary income property | Total |
|---|---|---|---|
| Sales proceeds |  |  | $1,150,000 |
| Less: Portion attributable to Ureeken and Lakeport Hospital |  |  | 150,000 |
| Proceeds from sale of petitioners' interest | $941,684 | $58,316 | 1,000,000 |
| Contribution portion | 164,794 | 10,206 | 175,000 |
|  |  |  |  |
| Fair market value | 1,106,478 | 68,522 |  |
| Cost plus improvements | 698,024 | 78,727 |  |
| Depreciation—per return | [2](43,392) | (9,841) |  |
| Adjusted basis | 654,632 | 68,886 |  |
| Total gain | 451,846 | (364) |  |

In their 1977 Federal income tax return, petitioners elected under section 170(b)(1)(C)(iii) to apply section 170(e)(1) to the contribution portion of the "bargain sale" of the Weimar capital gain property to Hewitt and reported a charitable contribution deduction as a result of the sale. Petitioners applied section 1011(b) to the portion of the property sold and reported the resulting gain under the installment method. Respondent does not contest petitioners' use of the installment method but argues that no contribution deduction is allowable and section 1011(b) is inapplicable.

The issue in this case involves the interaction between section 170(e)(1), which limits the deduction for the charitable contribution of certain appreciated property, and section 1011(b), which requires allocation of basis to determine gain resulting from a bargain sale to charity, with respect to the Weimar capital gain property. The treatment of the ordinary income property is not disputed. The deficiencies determined for 1978 and 1979 resulted from carryovers from 1977 to those years under section 170(d).

Section 170(a) allows a deduction for any charitable contribution, defined in section 170(c) to include a contribution or gift to certain charitable organizations. Under

---

[2] The stipulation filed by the parties reported this figure as (34,392). The remainder of the stipulated figures and petitioners' 1977 return indicate that the correct amount is (43,392) as found above.

section 170(b)(1)(C) and (E), the taxpayer's annual deduction for the contribution of capital gain property (i.e., any capital asset the sale of which at fair market would result in long-term capital gain) generally is limited to 30 percent of the taxpayer's adjusted gross income. If the taxpayer elects application of the "appreciated property" rules of section 170(e)(1) to such contributions, however, the annual deduction limitation is instead the general 50-percent standard of section 170(b)(1)(A). Sec. 170(b)(1)(C)(iii).

Section 170(e)(1) provides as follows:

SEC. 170(e). CERTAIN CONTRIBUTIONS OF ORDINARY INCOME AND CAPITAL GAIN PROPERTY.—

(1) GENERAL RULE.—The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of—

(A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), and

(B) in the case of a charitable contribution—

(i) of tangible personal property, if the use by the donee is unrelated to the purpose or function constituting the basis for its exemption under section 501 (or, in the case of a governmental unit, to any purpose or function described in subsection (c)), or

(ii) to or for the use of a private foundation (as defined in section 509(a)), other than a private foundation described in subsection (b)(1)(D),

50 percent (62½ percent, in the case of a corporation) of the amount of gain which would have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution).

For purposes of applying this paragraph (other than in the case of gain to which section 617(d)(1), 1245(a), 1250(a), 1251(c), 1252(a), or 1254(a) applies), property which is property used in the trade or business (as defined in section 1231(b)) shall be treated as a capital asset.

Application of section 170(e)(1) to the contribution of property thus requires that the amount of the charitable contribution be reduced by 50 percent of the gain that would have been long-term capital gain, and 100 percent of the gain that would not, if the taxpayer had sold the property at its fair market value.[3]

---

[3] As the statutory language indicates, absent the election under sec. 170(b)(1)(C)(iii), sec. 170(e)(1) applies to contributions of capital gain property only if the donee is a private

A taxpayer may make a charitable contribution by selling property to a charity for less than its fair market value. The amount of the charitable contribution resulting from such a "bargain sale" generally is the excess of the fair market value of the property over its sales price. See *Stark v. Commissioner*, 86 T.C. 243, 255-256 (1986); *Knott v. Commissioner*, 67 T.C. 681 (1977); *Waller v. Commissioner*, 39 T.C. 665, 677 (1963). Section 1011(b) provides as follows with respect to bargain sales:

SEC 1011(b). BARGAIN SALE TO A CHARITABLE ORGANIZATION.—If a deduction is allowable under section 170 (relating to charitable contributions) by reason of a sale, then the adjusted basis for determining the gain from such sale shall be that portion of the adjusted basis which bears the same ratio to the adjusted basis as the amount realized bears to the fair market value of the property.

In the present case, respondent does not deny that petitioners made a charitable contribution to a qualifying organization through the bargain sale of Weimar to Hewitt. In dispute is the amount by which petitioners' contribution must be reduced under section 170(e)(1). According to respondent, section 170(e)(1) precludes any deduction for the contribution of the Weimar capital gain property. As petitioners admit, this result is prescribed by the regulations under sections 170(e) and 1011(b), which provide in relevant part as follows:

Sec. 1.170A-4. Reduction in amount of charitable contributions of certain appreciated property.
(c) *Allocation of basis and gain—* * * * .

\* \* \* \* \* \* \*

(2) *Bargain sale.* (i) If there is a bargain sale of property to the charitable organization and if section 1011(b) and sec. 1.1011-2 apply, then for purposes of applying the reduction rules of section 170(e)(1) and this section to the contributed portion of the property there shall be allocated under section 1011(b) to the contributed portion of the property the portion of the adjusted basis which is not allocated under section 1011(b) to the noncontributed portion of the property for purposes of determining gain from the bargain sale. The portion of the adjusted basis which is so allocated to the contributed portion of the property shall be that portion of the adjusted basis of the entire property which bears the same ratio to the total adjusted basis as the fair market value of the

foundation or uses the property in a manner unrelated to its tax-exempt function or purpose. Sec. 170(e)(1)(B).

contributed portion of the property bears to the fair market value of the entire property. For purposes of applying section 170(e)(1) and paragraph (a) of this section to the contributed portion of the property in such a case, there shall be allocated to the contributed portion the amount of gain which is not recognized on the bargain sale but which would have been recognized as ordinary income or long-term capital gain if such contributed portion had been sold by the donor at its fair market value at the time of its contribution to the charitable organization.

(ii) *If there is a bargain sale of property to the charitable organization and if section 1011(b) and sec. 1.1011-2 do not apply, the taxpayer's adjusted basis of the entire property shall be allocated to the noncontributed portion of the property in accordance with paragraph (e) of sec. 1.1001-1 for purposes of determining gain from the sale. In such case, no portion of the adjusted basis shall be allocated to the contributed portion of the property.*

(iii) The term "bargain sale", as used in this subparagraph, means a transfer of property which is in part a sale or exchange of the property and in part a charitable contribution, as defined in section 170(c), of the property.

[Emphasis supplied.]

Sec. 1.1011-2. Bargain sale to a charitable organization.

(a) *In general.* (1) If for the taxable year a charitable contributions deduction is allowable under section 170 by reason of a sale or exchange of property, the taxpayer's adjusted basis of such property for purposes of determining gain from such sale or exchange must be computed as provided in section 1011(b) and paragraph (b) of this section. *If after applying the provisions of section 170 for the taxable year, including the percentage limitations of section 170(b), no deduction is allowable under that section by reason of the sale or exchange of the property, section 1011(b) does not apply and the adjusted basis of the property is not required to be apportioned pursuant to paragraph (b) of this section.* In such case the entire adjusted basis of the property is to be taken into account in determining gain from the sale or exchange, as provided in sec. 1.1001-1(e). *In ascertaining whether or not a charitable contributions deduction is allowable under section 170 for the taxable year for such purposes, that section is to be applied without regard to this section and the amount by which the contributed portion of the property must be reduced under section 170(e)(1) is the amount determined by taking into account the amount of gain which would have been ordinary income or long-term capital gain if the entire property had been sold by the donor at its fair market value at the time of the sale or exchange.*

\* \* \* \* \* \* \*

(b) *Apportionment of adjusted basis.* For purposes of determining gain on a sale or exchange to which this paragraph applies, the adjusted basis of the property which is sold or exchanged shall be that portion of the adjusted basis of the entire property which bears the same ratio to the adjusted basis as the amount realized bears to the fair market value of the entire property. The amount of such gain which shall be treated as

ordinary income (or long-term capital gain) shall be that amount which bears the same ratio to the ordinary income (or long-term capital gain) which would have been recognized if the entire property had been sold by the donor at its fair market value at the time of the sale or exchange as the amount realized on the sale or exchange bears to the fair market value of the entire property at such time. The terms "ordinary income" and "long-term capital gain", as used in this section, have the same meaning as they have in paragraph (a) of sec. 1.170A-4. For determining the portion of the adjusted basis, ordinary income, and long-term capital gain allocated to the contributed portion of the property for purposes of applying section 170(e)(1) and paragraph (a) of sec. 1.170A-4 to the contributed portion of the property, and for determining the donee's basis in such contributed portion, see paragraph (c)(2) and (4) of sec. 1.170A-4. For determining the holding period of such contributed portion, see section 1223(2) and the regulations thereunder.

   [Emphasis supplied.]

The regulations thus provide that, in the case of a bargain sale of appreciated property to which section 170(e)(1) applies, no deduction is allowable unless the contribution (i.e., excess of fair market value over sales price) exceeds the "appreciation reduction" (i.e., 50 percent and 100 percent of the inherent capital gain and ordinary income, respectively) for the *entire* property. Examples in the regulations confirm this rule. See secs. 1.170A-4(d), examples(5)-(6), and 1.1011-2(c), examples (4)-(7), Income Tax Regs.

In the present case, the amount of petitioners' contribution resulting from the bargain sale of the Weimar capital gain property before application of section 170(e)(1), $164,794, is less than 50 percent of the total inherent gain in such property, $451,846. Therefore, petitioners will be entitled to no charitable contribution deduction unless this aspect of the regulations is invalid.

In urging invalidation of the regulations, petitioners argue that, under section 170(e)(1), their contribution of the capital gain property should be reduced only by 50 percent of the gain inherent in the contributed portion of such property. Because the contributed portion of the captial gain property possessed a fair market value of $164,794 and a basis of $97,498 ($164,794/$1,106,478 × $654,632), petitioners' contribution under section 170(e)(1) would be the "actual" contribution, $164,794, less one-half of $67,296 or $131,146. As is discussed further below, this method is

consistent both with the basis allocation rules of section 1.170A-4(c)(1), Income Tax Regs., which apply in all cases except bargain sales,[4] and with the regulations' allocation provisions for bargain sales where the amount of the contribution exceeds the appreciation reduction under section 170(e)(1).

The Supreme Court has articulated the following standard for determining the validity of Treasury regulations:

> regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task "of administering the tax laws of the Nation." *United States v. Cartwright*, 411 U.S. 546, 550 (1973); accord, *United States v. Correll*, 389 U.S. 299, 307 (1967); see 26 U.S.C. sec. 7805(a). We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." *United States v. Correll, supra* at 307; accord, *National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 476-477 (1979). To put the same principle conversely, Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); accord, *Fulman v. United States*, 434 U.S. 528, 533 (1978); *Bingler v. Johnson*, 394 U.S. 741, 749-751 (1969). * * * [*Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981).]

Respondent characterizes the regulations in issue as "legislative," i.e., emanating from a specific congressional grant of authority and not merely from the Treasury's general rule-making power under section 7805(a), a characterization which we shall assume correct for purposes of our

---

[4] Sec. 1.170A-4(c)(1), Income Tax Regs., provides as follows:

(c) *Allocation of basis and gain*—(1) *In general.* Except as provided in subparagraph (2) of this paragraph—

(i) If a taxpayer makes a charitable contribution of less than his entire interest in appreciated property, whether or not the transfer is made in trust, as, for example, in the case of a transfer of appreciated property to a pooled income fund described in section 642(c)(5) and sec. 1.642(c)-5, and is allowed a deduction under section 170 for a portion of the fair market value of such property, then for purposes of applying the reduction rules of section 170(e)(1) and this section to the contributed portion of the property the taxpayer's adjusted basis in such property at the time of the contribution shall be allocated under section 170(e)(2) between the contributed portion of the property and the noncontributed portion.

(ii) The adjusted basis of the contributed portion of the property shall be that portion of the adjusted basis of the entire property which bears the same ratio to the total adjusted basis as the fair market value of the contributed portion of the property bears to the fair market value of the entire property.

(iii) The ordinary income and the long-term capital gain which shall be taken into account in applying section 170(e)(1) and paragraph (a) of this section to the contributed portion of the property shall be the amount of gain which would have been recognized as ordinary income and long-term capital gain if such contributed portion had been sold by the donor at its fair market value at the time of its contribution to the charitable organization.

decision.[5] Moreover, the regulations were issued soon after enactment of the statutory provisions and have survived numerous amendments to section 170(e). Although we have found no indication that Congress subsequently approved, or even considered, the aspect of these long-standing regulations that is in issue herein, the regulations are entitled to the highest standard of deference. See, e.g., *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982) (legislative regulation entitled to greater deference); *Watt v. Alaska*, 451 U.S. 259, 272-273 (1981) (contemporaneous interpretation by administrative agency that proposed the legislation); *United States v. Correll*, 389 U.S. 299, 305-306 (1967) (legislative reenactment doctrine).

However limited our standard of review, a regulation nevertheless is not valid unless it is reasonable and consistent with the statute's plain language, origin, and purpose. *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 477 (1979). As we stated in *State of Washington v. Commissioner*, 77 T.C. 656, 675-676 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982):

> even if a regulation is not "technically inconsistent" with the statutory language it seeks to interpret, if it is "manifestly inconsistent" with what Congress "surely * * * intended" to do, then it cannot stand. *United States v. Cartwright*, 411 U.S. 546, 557 (1973).
>
> * * * See *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 93-94 (1934), where the Supreme Court stated—
>
> "The intention of the lawmaker controls in the construction of taxing acts as it does in the construction of other statutes, and that intention is to be ascertained, not by taking the word or clause in question from its

---

[5] Sec. 170(e)(2) provides:

(2) ALLOCATION OF BASIS.—For purposes of paragraph (1), in the case of a charitable contribution of less than the taxpayer's entire interest in the property contributed, the taxpayer's adjusted basis in such property shall be allocated between the interest contributed and any interest not contributed in accordance with regulations prescribed by the Secretary.

Presumably under this authority, sec. 1.170A-4(c)(2), Income Tax Regs., allocates basis in the case of bargain sales between the "contributed" and "sold" portions of the property by reference to sec. 1.1011-2, Income Tax Regs. It is not clear, however, that Congress intended sec. 170(e)(2) to apply to contributions other than those excepted from the general rule of sec. 170(f) prohibiting any deduction for the contribution of less than the taxpayer's entire interest in the property. The operative language of sec. 170(e)(2) is identical to that used in sec. 170(f)(3)(A), and bargain sales, unlike the typical sec. 170(f) contributions, are the subject of the allocation rule of sec. 1011(b). It similarly is not clear that, but for the exceptions of sec. 170(f)(3)(B), the general rule of sec. 170(f)(3)(A) would apply to bargain sales or that bargain sales fall within one of the exceptions. Because bargain sales are not subject to sec. 170(f)(3)(A), there exists a strong argument that authority for the basis allocation provisions *for bargain sales* arises under sec. 7805(a) and not sec. 170(e)(2).

setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will."

## I. The Statutory Language

### A. Section 170(e)(1)

Virtually the only argument advanced by respondent in support of the regulations is based upon the language of section 170(e). Congress provided in section 170(e)(1) that the amount of any charitable contribution of appreciated property must be reduced by the relevant percentage (i.e., 50 or 100 percent) of "the amount of gain which would * * * [have been realized] if *the property contributed* had been sold by the taxpayer at its fair market value." (Emphasis supplied.) Respondent argues that "the property contributed" in the case of a bargain sale must refer to the entire property, not merely the contributed portion. He contends that Congress would have used "the contributed portion of the property" or a similar term had it intended the result advocated by petitioners.

Consistent with the regulations in issue, respondent's argument requires reduction of a charitable contribution, which in the case of a bargain sale equals the contributed portion of the property, by the gain inherent in the entire property, including the portion sold and not contributed. If "the property contributed" is considered not in isolation but in its proper context, however, section 170(e)(1) does not yield such an anomalous result.

The introductory language in section 170(e)(1) provides, "The amount of any *charitable contribution of property otherwise taken into account under this section* shall be reduced by * * * ." (Emphasis supplied.) In the case of a bargain sale, only the contributed portion of the property is taken into account under section 170. Indeed, only that portion constitutes a "charitable contribution of property"; the remainder is *sold* by the taxpayer. Cases involving bargain sales to charity in taxable years before enactment of present section 170(e) confirm this interpretation. See *Mason v. United States*, 513 F.2d 25, 29 (7th Cir. 1975) ("only the difference between the value of the transferred

asset and the value of the consideration received could even arguably be characterized as the 'amount of the gift' "); *Waller v. Commissioner*, 39 T.C. 665, 677 (1963) ("The amount of the gift is the difference between the fair market value of the property and the amount which the * * * [recipient] paid therefor * * * .") Thus, in using the term "the property contributed," Congress must have referred to only the *contributed portion* of bargain sale property.

The unreasonableness of the regulations based solely upon the language of section 170(e)(1) is further illustrated by the distinction drawn in section 1.170A-4(c), Income Tax Regs., between bargain sales and the paradigm contributions of "less than the taxpayer's entire interest" in the property. See *supra* notes 4 & 5. If "the property contributed" in section 170(e)(1) means the entire property, then where the taxpayer contributes a partial interest in property for which a deduction is allowable under section 170(f), the unrealized appreciation on both the contributed and the noncontributed portions should be used in computing the section 170(e)(1) reduction. Unlike the special rules for bargain sales in regulations section 1.170A-4(c)(2), however, the general rules in section 1.170A-4(c)(1), Income Tax Regs., do not prescribe such a result. The statute provides no basis for this distinction between a bargain sale, where the noncontributed portion is sold, and a contribution of a partial interest, where the noncontributed portion is retained by the taxpayer. As is indicated below in our discussion of the purpose behind section 1011(b), Congress provided in that section, *not in section 170(e)(1)*, for the special situation where the noncontributed portion is sold, not retained.

An even more fundamental problem with the regulations in light of the language of section 170(e)(1) is that the regulations define "the property contributed" inconsistently even in the sole context of bargain sales. Where, as in the present case, the reduction for appreciation under section 170(e)(1) (computed using the unrealized gain in the entire property) exceeds the contribution element of the bargain sale, "the property contributed" refers to the entire property. Where, however, the amount of the contribution exceeds the section 170(e)(1) amount, the regulations ulti-

mately define the statutory term as only the contributed portion of the property.

This result in the latter case is best illustrated by an example from the regulations:

*Example (4).* In 1970, B, a calendar-year individual taxpayer, sells to a church for $2,000 stock held for not more than 6 months which has an adjusted basis of $4,000 and a fair market value of $10,000. B's contribution base for 1970, as defined in section 170(b)(1)(F), is $20,000 and during such year B makes no other charitable contributions. Thus, he makes a charitable contribution to the church of $8,000 ($10,000 value - $2,000 amount realized). Since without regard to this section B is allowed a deduction under section 170 of $2,000 ($8,000 - [$10,000 value - $4,000 adjusted basis]) for his charitable contribution of $8,000 to the church, under paragraph (b) of this section the adjusted basis for determining gain on the bargain sale is $800 ($4,000 adjusted basis × $2,000 amount realized/$10,000 value of stock). Accordingly, B has a recognized short-term capital gain of $1,200 ($2,000 amount realized - $800 adjusted basis) on the bargain sale. After applying section 1011(b) and paragraphs (a)(1) and (c)(2)(i) of sec. 1.170A-4, B is allowed a charitable contributions deduction for 1970 of $3,200 ($8,000 value of gift - [$8,000 - ($4,000 adjusted basis of property × $8,000 value of gift/$10,000 value of property)]). [Sec. 1.1011-2(c), example (4), Income Tax Regs.]

In computing an initial deduction of $2,000, the example reduces the contribution by the entire inherent gain of $6,000 and thus defines "the property contributed" in section 170(e)(1) as the entire property. In ultimately allowing a deduction of $3,200, however, the example reduces the contribution only by the gain inherent in the contributed portion and thus defines the statutory term as the contributed portion of the property. (The gain inherent in the contributed portion is $6,000 × $8,000/$10,000 or $4,800, which is the difference between the $8,000 contribution and the $3,200 ultimate deduction.) Thus, the regulations require use of two inconsistent interpretations of "the property contributed" to compute the deduction in such a case, and the ultimate interpretation is inconsistent with that mandated by the regulations in the present case. There exists no indication that Congress intended the term to possess more than one meaning, and only if "the property contributed" means the contributed portion is a uniform definition applicable to all cases.[6]

---

[6] If the term were ultimately defined as the entire property in cases like example (4) in sec. 1.1011-2(c), Income Tax Regs. (and thus the deduction limited to $2,000 therein), the taxpayer

## B. Section 1011(b)

Respondent intimates that the introductory clause of section 1011(b), "If a deduction is allowable under section 170 (relating to charitable contributions) by reason of a sale," supports the methodology prescribed by the regulations. The provisions of section 170, including section 170(e), must, of course, be applied to determine whether a charitable contribution deduction is allowable before application of section 1011(b). Section 1011(b) provides no rules, however, for the *manner* in which section 170 is to be applied. Thus section 1011(b) does not, as respondent and the regulations apparently assume, require application of section 170(e)(1) using the unrealized gain on the entire property. Petitioners' method of computing the section 170(e)(1) amount based upon the appreciation inherent in only the contributed portion likewise requires application of section 170(e) before section 1011(b).[7] Although petitioners' method results in a charitable contribution deduction, and hence application of section 1011(b), in more cases than do the regulations, this result is mandated by the history and purpose of both section 170(e) and section 1011(b), to which we now turn.

## II. History and Purpose of the Statutory Provisions

As initially codified by the Revenue Act of 1962, Pub. L. 87-834, sec. 13(d), 76 Stat. 960, 1034, section 170(e) simply provided:

SEC. 170(e). SPECIAL RULE FOR CHARITABLE CONTRIBUTIONS OF SECTION 1245 PROPERTY.—The amount of any charitable contribution

---

would be denied a deduction with respect to an element of gain realized under sec. 1011(b). Presumably the drafters of the regulations recognized that this would be unreasonable.

[7] One commentator suggests that the introductory language of sec. 1011(b) merely reflects congressional intent to exclude from the section bargain sales to noncharitable donees like that in *Fincke v. Commissioner*, 39 B.T.A. 510 (1939). Although this commentator advocates the method used by petitioners, he assumes that application of sec. 170(e)(1) before sec. 1011(b) mandates use of the inherent gain in the entire property for computing the sec. 170(e)(1) reduction. See Taggart, "The Charitable Deduction," 26 Tax L. Rev. 63, 130-131 (1970). The bargain sale of zero-basis ordinary income property illustrates, however, that petitioners' approach is consistent with the statutory language. In such a case, sec. 170(e)(1) precludes any deduction and therefore application of sec. 1011(b). Moreover, various other provisions of sec. 170 might prevent a deduction in connection with a bargain sale and thus obviate application of sec. 1011(b).

Another commentator, however, interprets the statutory provisions consistently with respondent's position. See Jackson, "The New Rules Governing Bargain Sales to Charitable Organizations under the Tax Reform Act of 1969," 24 Tax Lawyer 279, 283-284 (1971).

taken into account under this section shall be reduced by the amount which would have been treated as gain to which section 1245(a) applies if the property contributed had been sold at its fair market value (determined at the time of such contribution).

The scope of the provision was subsequently expanded to include inherent recapture gain under sections 1250(a) and 617(d) by the Revenue Act of 1964, Pub. L. 88-272, sec. 231(b)(1), 78 Stat. 19, 105, and Act Relating to the Income Tax Treatment of Exploration Expenditures in the Case of Mining, Pub. L. 89-570, sec. 1(b)(1), 80 Stat. 759, 762 (1966), respectively. Congress prescribed the present application of section 170(e)(1) to all unrealized non-long-term capital gain and to unrealized long-term capital gain in specified situations as part of the fundamental revision of section 170 in the Tax Reform Act of 1969, Pub. L. 91-172, sec. 201(a), 83 Stat. 487, 549 (hereinafter the 1969 Act).

Section 1011(b) was first enacted in section 201(f) of the 1969 Act (83 Stat. 564). Prior to the effective date of section 1011(b), the taxpayer who made a bargain sale to charity realized gain equal to the excess of the amount realized over the entire basis in the property. See, e.g., *Potter v. Commissioner*, 38 T.C. 951 (1962).

Both the expansion of section 170(e) and the enactment of a bargain sale provision like section 1011(b) were initially recommended to Congress by the Treasury Department. The Treasury proposal with respect to section 170(e) would have applied only to potential ordinary income or short-term capital gain and, instead of requiring the taxpayer to reduce the amount of the contribution, would have allowed a deduction for the full value of the property but required recognition of the gain. See 2 U.S. Treasury Dept., Tax Reform Studies and Proposals, 21, 38, 179-182 (Comm. Print of House Ways and Means Comm. and Senate Finance Comm. 1969). The bill initially passed by the House included a bargain sale provision identical to section 1011(b) and allowed the taxpayer who donated appreciated property to elect either recognition of inherent gain (as would be required by the Treasury proposal) or reduction of the contribution (as required by section 170(e)). Under the House bill, the appreciated property rules applied to inherent long-term capital gain in specified situations. See H.R.

13270, 91st Cong., 1st Sess., sec. 201(c), (d) (Aug. 2, 1969). The Senate deleted the bargain sale provision from the House bill and eliminated the option of the taxpayer contributing appreciated property to recognize gain instead of reducing his contribution.[8] See H.R. 13270, 91st Cong., 1st Sess., sec. 201(a) (Nov. 21, 1969). As ultimately codified by Congress in the 1969 Act, sections 170(e)(1) and 1011(b) were substantially identical to present law.

The Ways and Means Committee report accompanying H.R. 13270 described the purpose and operation of the appreciated property and bargain sale rules as follows:

*3. Charitable contributions of appreciated property (sec. 201(c) and (d) of the bill and secs. 170 and 83 of the code)*

*Present law.*—Under present law, a taxpayer who contributes property which has appreciated in value to charity generally is allowed a charitable contributions deduction for the fair market value of the property. A special rule (sec. 170(e)) applies, however, to gifts of certain property so that the amount of charitable contribution is reduced by the amount of gain which would have been treated as ordinary income under the recapture rules of sec. 617(d)(1) (certain mining property), sec. 1245(a) (certain depreciable tangible personal property), and sec. 1250(a) (certain depreciable real property) if the property contributed had been sold at its fair market value. Other than these exceptions, a deduction is allowed for the full value of the property and tax is not imposed on the appreciation at the time of the gift.

*General reasons for change.*—The combined effect, in the case of charitable gifts of appreciated property, of not taxing the appreciation and at the same time allowing a charitable contributions deduction for the appreciation is to produce tax benefits significantly greater than those available with respect to cash contributions. The tax saving which results from not taxing the appreciation in the case of gifts of capital assets is the otherwise applicable capital gains tax which would be paid if the asset were sold. In the case of many other types of assets, this tax saving is at the taxpayer's top marginal rate. Thus, in some cases it actually is possible for a taxpayer to realize a greater after-tax profit by making a gift of appreciated property than by selling the property, paying the tax on the gain, and keeping the proceeds. This is true in the case of gifts of appreciated property, which would result in ordinary income if sold, when the taxpayer is at the high marginal tax brackets and the cost basis of the ordinary income asset is not a substantial percentage of the fair market value. For example, a taxpayer in the 70-percent tax bracket could make a gift of $100 of inventory ($50 cost

---

[8] In these respects, the Senate bill was consistent with a second Treasury Department proposal. See Technical Explanation of Treasury Department Tax Proposals, *reprinted in* Hearings Before House Ways and Means Committee on Tax Reform, 91st Cong., 1st Sess. 5069, 5152-5153 (1969).

basis) and save $105 in taxes (70-percent of the $50 gain if sold, or $35, plus 70-percent of the $100 fair market value of the inventory, or $70).

In addition, if property is sold to a charity at a price less than its fair market value—a so-called bargain sale—the proceeds of the sale are treated as a return of the cost and the seller is allowed a charitable contributions deduction for the appreciation in excess of the sale price. If the sale price is above his cost basis, the taxpayer pays a tax on the difference. However, if the sale price is equal to his cost basis, the entire appreciation is taken as a deduction and no tax is paid on the gain. In either case, the taxpayer is not required to allocate the cost basis between the sale part of the transaction and the gift part of the transaction. If this were done, the taxpayer would be required to pay tax on the portion of the gain attributable to the sale part of the transaction.

The tax saving available in the case of a bargain sale of property to a charity may be illustrated by the example of a taxpayer in the 70-percent tax bracket who makes a sale of inventory with a value of $200 to a charity at its cost of $100. The taxpayer in this case would save $140 in taxes with respect to his $100 charitable gift (70 percent of the $100 gain if sold, or $70, plus 70 percent of the $100 of appreciation taken as a charitable deduction, or $70).

Your committee does not believe the charitable contributions deduction was intended to provide greater—or even nearly as great—tax benefits in the case of gifts of property than would be realized if the property were sold and the proceeds were retained by the taxpayer. In cases where the tax saving is so large, it is not clear how much charitable motivation actually remains. It appears that the Government, in fact, is almost the sole contributor to the charity. Moreover, an unwarranted benefit is allowed these taxpayers, who usually are in the very high income brackets. Your committee, therefore, considers it appropriate to narrow the application of the tax advantages in the case of gifts of certain appreciated property.

*Explanation of provisions.*—In order to remove some of the present tax advantages of gifts of appreciated property over gifts of cash, the bill provides that taxpayers making contributions of appreciated property are to be required, at their option, either (A) to reduce their charitable contribution deduction to the amount of their cost or other basis in the property or (B) to take a charitable deduction based on the fair market value of the property but to include in their tax base the untaxed appreciation with respect to the property involved. * * *

        \*      \*      \*      \*      \*      \*      \*

*(v) Bargain sales.*—In the case of so-called bargain sales to charities— where a taxpayer sells property to a charitable organization for less than its fair market value (often at its cost to the taxpayer)—the bill provides that the cost or basis of the property is to be allocated between the portion of the property "sold" and the portion of the property "given" to the charity on the basis of the fair market value of each portion. For example, if a taxpayer sold land with a fair market value of $20,000 to a charitable organization (which was not a private foundation) at his cost of

$12,000, he would be required to allocate 60 percent of the cost ($7,200) to the portion "sold" to the charity ($12,000) and 40 percent of the cost ($4,800) to the portion "given" to the charity ($8,000). Thus, this taxpayer would be required to include $4,800 as gain from a sale of a capital asset in his tax return, and as under present law would be allowed a charitable contributions deduction of $8,000.

[H. Rept. 91-413 (1969), 1969-3 C.B. 200, 234-236.]

The committee's explanation of the bargain sale rule (i.e., the final paragraph in the above excerpt) does not support the approach of the regulations in issue. The report simply indicates that basis must be allocated between the portion "given" and the portion "sold." It contains no indication that Congress intended a special rule similar to that in the regulations to apply where the property is subject to section 170(e)(1).

The Ways and Means Committee nevertheless illustrated the operation of the bargain sale rule using an example to which section 170(e)(1) would not apply, as the taxpayer in the example sold a capital asset to an organization "which was not a private foundation." Indeed, the entire explanation provides almost no explicit guidance with respect to the interaction of section 170(e)(1) and the bargain sale rule but instead describes each rule as if it existed in isolation. The bargain sale example appearing in the "General reasons for change" section states that the taxpayer selling inventory for less than fair market value would, but for the bargain sale rule, avoid taxes on and obtain a deduction with respect to the inherent gain. If the House's appreciated property rule were in effect, however, this presumably would not be the case, as the taxpayer would be required either to reduce his contribution or to recognize gain on the contributed portion.

The report also generally indicates that the appreciated property and bargain sale rules possess a common purpose of preventing the taxpayer from obtaining a deduction attributable to untaxed appreciation ("in excess of the sale price," in the case of bargain sales). Such statements do not specify the respective *element* of appreciation to which the two rules apply. The Finance Committee and Conference reports preserve this ambiguity by describing both the bargain sale rule and the various applications of section 170(e) as "tak[ing] the appreciation in value into account for

tax purposes in gifts of appreciated property." S. Rept. 91-552 (1969), 1969-3 C.B. 423, 476; H. Rept. 91-782 (Conf.) (1969), 1969-3 C.B. 644, 654. Certain language in the legislative history thus blurs the respective parameters of section 170(e)(1) and section 1011(b).

Although describing the two rules in isolation, more specific statements of purpose contained in the Ways and Means Committee report nevertheless allow us to infer congressional intention with respect to the interaction of the sections. The report indicates that section 170(e)(1) was designed to prevent a taxpayer from realizing a windfall by giving appreciated property to charity instead of selling the property and donating the proceeds. As illustrated by the election contained in the initial House bill to recognize the appreciation and deduct the full fair market value, reduction of the contribution under section 170(e)(1) is a functional substitute for a deemed sale of the property before contribution of the proceeds. Where a transaction constitutes an actual sale, however, this "deemed sale substitute" of section 170(e)(l) is inappropriate. Moreover, Congress recognized that a bargain sale to charity included an actual sale. This recognition is implicit in the Ways and Means Committee statement that the bargain sale rule requires "the taxpayer * * * to pay tax on the portion of the gain attributable to the sale part of the transaction" and explicit in the initial Treasury proposal, which quantifies precisely the element of appreciation taken into account:

*Present law*

Under existing law a donor may *unduly magnify the tax advantages already inherent in giving appreciated property* to charity by selling the property to a charity for less than its fair value.

For example, an individual in the 50 percent tax bracket owning $125,000 worth of stock which cost him $25,000 may wish to make a $100,000 gift to charity. If he donates $100,000 of stock to charity he is entitled to a $100,000 deduction against other income and the net cost of his gift is $50,000 (50 percent of $100,000). He simply ignores the fact that a portion of the value of donated stock ($80,000) represents gain which has never been included in income. On the other hand, were he to follow the bargain sale method, he would sell $125,000 of stock to the charity for the cost basis of that amount of stock, $25,000. Under the present law the $25,000 sales proceeds would first be allocated to a return of his cost, or tax basis, and, since that basis is $25,000, there would be no tax. His gift to the charity would remain a $100,000 gift,

and his deduction would remain a $100,000 deduction. However, by following this procedure, instead of being left with $25,000 of stock with a cost basis of $5,000 (which if he later sold would cost him $5,000 in tax thus leaving him $20,000 in cash) he has $25,000 in cash. Thus, his $100,000 gift to charity has permitted him to recover his investment in the property while at the same time securing a deduction for the appreciation in value without imposition of tax.

*The rule permitting the nontaxable donation of appreciated property clearly should not be permitted to shield from tax what is essentially a functionally unrelated sale of an additional amount of stock. The taxpayer intends to benefit the charity only by the net amount of the gift. He should not be allowed to enlist the charity as a buyer of his stock to save him a tax liability.*

*Proposal*

In such cases it is recommended that a contributor be required to allocate the basis of the property between the gift element and sale element on the basis of the fair market value of each part. If this rule were applied to the example above, since one-fifth of the total value of the stock is being sold, one-fifth of the taxpayer's basis in the stock would be allocated to the sale element of the transaction. Thus, he would be deemed to have a $5,000 basis in the stock sold to the charity for $25,000, and would be subject to tax on the resulting $20,000 gain. *Under the proposal the individual would therefore be in precisely the same position he would have been in had he donated $100,000 worth of stock to charity and simultaneously sold $25,000 more on the open market.*

[2 U.S. Treasury Dept., Tax Reform Studies and Proposals 181-182 (Comm. Print of House Ways and Means Comm. and Senate Finance Comm. 1969). Emphasis supplied.]

Section 1011(b) was thus designed to recognize the sale element of a bargain sale for what it is—a sale. This section, not section 170(e)(1), ensures that the taxpayer receives no contribution deduction without realizing inherent gain on the portion of the property sold. Most importantly, the mechanism by which section 1011(b) accomplishes this result is realization of such gain, not reduction of the deduction.[9]

---

[9] Indeed, the regulations generally provide that gain recognition precludes application of sec. 170(e)(1):

Sec. 1.170A-4(a). * * * Section 170(e)(1) and this paragraph do not apply to reduce the amount of the charitable contribution where, by reason of the transfer of the contributed property, ordinary income or capital gain is recognized by the donor in the same taxable year in which the contribution is made. * * *

Requiring immediate recognition of gain on the sold portion of the property arguably would effect Congress' stated intention with respect to bargain sales. Sec. 1011(b), however, only causes *realization* of such gain; it does not prescribe when the gain is to be *recognized*. Presumably for this reason, respondent neither challenges petitioner's use of the installment

The regulations therefore understate both the deduction and the realized gain by the amount of the taxpayer's basis in the contributed portion of the property where the section 170(e)(1) amount (computed with respect to the entire property) equals or exceeds the amount of the contribution. If the property is capital gain property, the regulations also improperly reduce the contribution by 100 percent of the gain on the contributed portion. The regulations thus both preclude section 1011(b) from its intended operation and place the taxpayer in a *less* favorable position than would result if he sold the property at fair market value and then donated the excess over the bargain sales price. The latter effect distorts and unduly extends Congress' manifest purpose in enacting the "deemed sale substitute" through section 170(e)(1).[10]

Moreover, this distortion arises immediately and arbitrarily depending upon the bargain sales price. If, for example, the amount of the contribution (excess of fair market value over sales price) is $1 more than the section 170(e)(1) amount, the regulations prescribe the proper basis and gain allocations between the contributed and sold portions of the property. If the sales price is increased by $1, however (in which case section 170(e)(1) as interpreted by the regulations reduces the contribution to zero), the distortion occurs in full. Certainly this is an "arbitrary and capricious" effect, and Congress could not have intended

method to report the gain from the Weimar property nor argues that use of such method should affect our decision herein.

[10] Assume, for example, the sale for $900 of capital gain property with a basis of $200 and a value of $1,000. Under the regulations, the taxpayer would be entitled to no contribution deduction through sec. 170(e)(1) and would realize long-term capital gain of $700, thus increasing his taxable income by $350. Had the taxpayer sold the property for $1,000 and then donated $100, he would be entitled to a $100 deduction and would realize $800 long-term capital gain, resulting in only a $300 increase in taxable income. Unlike the regulations, our holding herein yields an equivalent result: The taxpayer would be entitled to a deduction of $60 ($100 contribution less 50 percent of the $80 gain inherent in contributed portion) and would realize $720 long-term capital gain ($900 sales price less $180 basis in sold portion), thus increasing his taxable income by $300. The $50 disparity between the treatment under the regulations and the correct approach equals the 50-percent capital gain deduction times both the $20 basis in the contributed portion (which the regulations mischaracterize as reduced deduction) and the $80 gain inherent in such portion (which the regulations reduce by 100 percent).

If the property were ordinary income property, the regulations would cause only the $20 mischaracterization and, because ordinary income rates would apply, would not affect taxable income.

that such insignificant economic differences would result in such dramatic differences in tax liability.

### III. Conclusion

Given the respective roles of the Treasury Department in administering the tax laws and of this Court in interpreting such laws, we do not invalidate Treasury regulations unless unreasonable and inconsistent with the language, history, and purpose of the statute. As previously discussed, the regulations in issue in this case are entitled to the highest standard of judicial deference. If the regulations constituted a reasonable interpretation of sections 170(e)(1) and 1011(b), we would be compelled to uphold them, even if petitioners' interpretation were more reasonable. See *Long v. United States*, 652 F.2d 675, 679 (6th Cir. 1981), and cases cited therein. "The choice among reasonable interpretations is for the * * * [Treasury], not the courts." National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 488 (1979). In the present case, however, petitioners' position represents the only rational statutory interpretation. Respondent has not raised, nor have we discovered, a single rational basis for the allocation provisions in issue other than enhancement of tax revenues. That purpose, however, cannot be applied in an arbitrary manner and is inconsistent with both allowance of charitable contribution deductions and reduced effective rates of taxation of capital gain. The disputed regulations conflict with the language and purpose of the statutory provisions and lead to anomalous and inequitable tax results. Cf. *State of Washington v. Commissioner*, 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982). To the extent inconsistent with our opinion herein, sections 1.170A-4(c) and 1.1011-2, Income Tax Regs., are invalid.[11]

To reflect concessions by petitioners,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

[11] The Court of Appeals for the Ninth Circuit recently upheld sec. 1.1011-2(a)(3), Income Tax Regs., which provides that indebtedness on the property transferred must be included in the amount realized. *Ebben v. Commissioner*, 783 F.2d 906 (9th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court. The present case does not involve that portion of the regulation.

STERRETT, SIMPSON, GOFFE, CHABOT, NIMS, KÖRNER, SHIELDS, HAMBLEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, and WILLIAMS, *JJ.*, agree with the majority opinion.

GERBER, *J.*, did not participate in the consideration of this case.

———————

WRIGHT, *J.*, concurring: While I join in the majority opinion in this case, I choose to write separately in order to address the questions raised by Judge Parker's concurring and dissenting opinion. The concurring and dissenting opinion concludes that the result reached by the majority can also be reached without invalidating the regulations under sections 170(e)(1) and 1011(b). I disagree.

The analysis set forth in the concurring and dissenting opinion turns on a distinction between the elective and the mandatory application of section 170(e)(1). The taxpayers in the instant case made an election under section 170(b)(1)(C)(iii) to apply section 170(e)(1) to contributions of capital gain property made in 1977. Section 170(b)(1)(C) provides, in general, that deductions for contributions of capital gain property to which section 170(e)(1)(B) does not apply cannot exceed 30 percent of a taxpayer's contribution base for a taxable year. However, under section 170(b)(1)(C)(iii), the taxpayer may elect to have section 170(e)(1) apply to such contributions if section 170(e)(1)(B) does not otherwise apply (i.e., if the application of section 170(e)(1)(B) is not mandatory). If such an election is made, the contribution is not subject to the 30-percent limitation of section 170(b)(1)(C); however, the amount of the contribution must be reduced in accordance with section 170(e)(1). Under section 170(e)(1)(A), the amount of any charitable contribution must be reduced by the amount of gain which would have been ordinary income or short-term capital gain if the property had been sold by the taxpayer at its fair market value. Section 170(e)(1)(B) provides that the amount of a contribution of tangible personal property which is unrelated to the purpose or function of the donee organization, or a contribution to or for the use of a private foundation which is not described in section 170(b)(1)(E), must be reduced by 50 percent of the amount of gain which

would have been long-term capital gain if the property had been sold by the taxpayer at its fair market value. A taxpayer has the option, therefore, when making a contribution of capital gain property (not otherwise subject to section 170(e)(1)(B)), of restricting that contribution to 30 percent of his contribution base for the taxable year under section 170(b)(1)(C), or of taking a deduction of up to 50 percent of his contribution base while being subject to the reduction requirements of section 170(e)(1).

Section 170(e)(2) provides that for purposes of section 170(e)(1), if a taxpayer contributes less than his entire interest in the property, the taxpayer's basis in such property shall be allocated between the portion contributed and any portion not contributed in accordance with the regulations. Any gain to the taxpayer on the sale portion of a charitable bargain sale is determined under section 1011(b), which provides that the adjusted basis for determining gain is that portion of the adjusted basis which bears the same ratio to the total adjusted basis as the amount realized bears to the fair market value of the property.

The regulations under these sections provide that, for a charitable bargain sale under section 170(e)(1), no charitable contribution deduction is allowable unless the contribution portion of the bargain sale exceeds the amount of the reduction required under section 170(e)(1) for the unrealized appreciation in the entire property. The majority opinion holds that the taxpayers in the instant case are entitled to claim a deduction because these regulations are invalid to the extent that they require reduction of the contribution portion of the bargain sale by a percentage of the unrealized appreciation in the entire property rather than by a percentage of the unrealized appreciation in the contributed portion. The concurring and dissenting opinion, however, attempts to circumvent this reasoning by concluding that, because the taxpayers in the instant case elected to have section 170(e)(1) apply, they are not subject to the mandatory reduction of section 170(e)(1)(B) for purposes of determining whether a deduction is allowable, and that the bargain sale at issue therefore meets the test of the

regulations as written. This analysis is not supported by the statute or the regulations.[1]

If a taxpayer contributes property of the type described in section 170(e)(1)(B)(i) or 170(e)(1)(B)(ii), the charitable contribution must be reduced by 50 percent of the amount of gain which would have been long-term capital gain had the property been sold at its fair market value. The concurring and dissenting opinion concludes that, in the absence of a contribution of property described in these subparagraphs, the 50-percent reduction is not required in order to determine whether a deduction is allowable for such contribution. If section 170(e)(1)(B) does not apply when a taxpayer makes this election, the election has no effect on the determination of the allowability of such deduction because section 170(e)(1)(A) does not apply to long-term capital gain property.

Under the analysis in the concurring and dissenting opinion, section 1.1011-2(a)(1), Income Tax Regs., is correctly used to make an initial determination as to whether a charitable contribution deduction is allowable under section 170. The analysis used bifurcates section 170(e)(1) into "mandatory" and "elective" elements. Specifically, the concurring and dissenting opinion treats the application of the reduction provisions of section 170(e)(1)(B) as applying to the determination of allowability only where such reductions are mandatory; i.e., where the taxpayer contributes property of the type described in section 170(e)(1)(B)(i) or (ii). If the taxpayer has elected the application of section 170(e)(1), however, the concurring and dissenting opinion concludes that the reduction under section 170(e)(1)(B) need not be made at this point. In reaching this conclusion, the concurring and dissenting opinion assumes that the language in section 1.1011-2(a)(2), Income Tax Regs., provides a wholesale exclusion of section 170(b) for purposes of determining whether a deduction is allowable under section 1.1011-2(a)(1). Neither the statute nor the regulations at issue herein provide authority for this reasoning.

The concurring and dissenting opinion, at note 3, states that the reference to the percentage limitations of section

---

[1]See also secs. 170A-4(b)(2) and 1.170A-8(d)(2)(i)(a), Income Tax Regs., treating "elective" and "mandatory" reductions under section 170(e)(1)(B) identically.

170(b) in section 1.1011-2(a)(1), Income Tax Regs., was intended to apply only with respect to bargain sales to organizations described in section 170(b)(1)(B). Section 1.1011-2(a)(2), Income Tax Regs., provides that basis must be allocated under section 1011(b) for charitable contributions which are carried over under section 170(b)(1)(C)(ii) or section 170(d) to subsequent taxable years. Because section 170(b) contains the annual percentage limitations, and therefore necessitates carryovers, the concurring and dissenting opinion concludes that section 170(b) is irrelevant to the determination of allowability under section 1.1011-2(a)(1), Income Tax Regs., except with respect to contributions of property described in section 170(b)(1)(B). However, the limited exception carved out by section 1.1011-2(a)(2), Income Tax Regs., does not support the conclusion that section 170(b) is to be disregarded entirely, including the provisions for the election to apply section 170(e)(1) contained in section 170(b)(1)(C)(iii).[2]

The election under section 170(b)(1)(C)(iii) requires a reduction of the charitable contribution portion of the bargain sale in the instant case. There is no authority in either the Code or the regulations which permits the type of analysis adopted in the concurring and dissenting opinion. In the absence of such authority, a deduction is unavailable to the petitioners herein unless the regulations which require consideration of the unrealized appreciation in the entire property are invalid. For the reasons stated in the majority opinion, I believe this to be the correct result. Thus, although the concurring and dissenting opinion reaches the correct result, for the reasons stated above, it does so for the wrong reasons. I therefore join in the majority opinion.

GOFFE, CHABOT, HAMBLEN, COHEN, and WILLIAMS, *JJ.*, agree with this concurring opinion.

---

[2] The concurring and dissenting opinion reads the term "allowable" in sec.1.1011-2(a)(1), Income Tax Regs., to mean allowable without regard to the percentage limitations of sec. 170(b). The word allowable, however, cannot be so narrowly defined in this context. In drafting sec. 170 Congress used the terms "allowed" and "allowable" interchangeably. See sec. 170(a); compare sec. 170(b)(1)(A) (flush language) and sec. 170(b)(1)(B) (introductory language) with sec. 170(b)(1)(B)(ii). Further, as used in sec. 1.1011-2(a)(2), Income Tax Regs., the term "allowable" is used to mean allowable after application of the percentage limitations of sec. 170(b), because only after such limitations are applied could a contribution be carried over to a subsequent year.

PARKER, *J.*, concurring and dissenting: If my choices were between the majority's position (invalidating portions of certain regulations) or Judge Whitaker's dissent (resolving doubts in favor of the regulations), I would simply join in the dissent. However, I do not see the choices as so narrowly restricted. I would follow another route to reach the same result the majority has reached, but without invalidating any portion of the regulations and by merely applying the regulations in a different method and sequence. For the reasons set forth below, I concur in the majority's result only.

In a "bargain sale" transaction,[1] petitioners sold capital gain property with a fair market value of $1,106,478 to an organization described in section 170(b)(1)(A) for the amount of $941,684. Petitioners' adjusted basis in the property at the time of the sale was $654,632. In the year of the sale (1977), petitioners elected under section 170(b)(1)(C)(iii) to apply section 170(e)(1) to all contributions of capital gain property *to which subsection (e)(1)(B) did not otherwise apply* made by petitioners during that year.

The parties in this case apparently agree that the regulations under sections 170(e) and 1011(b) preclude petitioners from any charitable contributions deduction in connection with the bargain sale. The majority accepts the parties' litigating position as the correct reading of the regulations, and hence must decide whether or not the regulations are valid. However, I think both parties misread or misapply the regulations. Under an alternative application that I believe to be the correct one, the validity of these regulations is not in issue and petitioners are allowed a charitable contributions deduction of $131,146 in connection with the bargain sale, most of which is available as a carryover to the years before the Court.

But for petitioners' election under section 170(b)(1)(C)(iii), this case would never have arisen. See, i.e., sec. 1.1011-2(c), example (7), Income Tax Regs. Therefore, I think the appropriate issue presented in this case is whether, in a bargain sale transaction, an election under section

---

[1] The term "bargain sale" means a transfer of property which is in part a sale or exchange of the property and in part a charitable contribution, as defined in sec. 170(c), of the property. Sec. 1.170A-4(c)(2)(iii), Income Tax Regs.

170(b)(1)(C)(iii) to apply section 170(e)(1)(B) requires the *entire property* to be taken into account, as provided in section 1.1011-2(a)(1), Income Tax Regs., in determining the amount of the reduction required under section 170(e)(1)(B). As I see the case, there are two separate steps involving reductions under section 170(e)(1)(B)—one involving section 1.1011-2(a)(1), Income Tax Regs., and one not involving it. As explained below, I think that the reduction required under section 170(e)(1)(B) resulting from an election by the taxpayer under section 170(b)(1)(C)(iii) has no applicability to section 1.1011-2(a)(1), Income Tax Regs. Consequently; I reach the same result that the majority reaches without addressing the validity of any regulation.

In a bargain sale to a charitable organization, part of the transaction is treated as a sale and part is treated as a charitable contribution. Generally, the charitable contribution is the difference between the fair market value of the property at the time of the sale and the amount realized. However, prior to calculating either the amount of gain on the sale or the amount of the deduction allowed under section 170, an initial determination is required under section 1011(b) and section 1.1011-2(a)(1), Income Tax Regs., to decide whether or not basis is to be allocated. This is sometimes called the "allowability test," and if the bargain sale does not pass this initial test, no charitable contribution is allowable and all of the basis remains available to reduce the amount of taxable gain on the sale.[2]

Section 1011(b) provides that:

SEC. 1011(b). BARGAIN SALE TO A CHARITABLE ORGANIZATION.—If a deduction is allowable under section 170 (relating to charitable contributions) by reason of a sale, then the adjusted basis for determining the gain from such sale shall be that portion of the adjusted basis which bears the same ratio to the adjusted basis as the amount realized bears to the fair market value of the property.

Section 1.1011-2(a)(1), Income Tax Regs., is a specific regulation pertaining only to bargain sales to charitable organizations. This regulation determines whether or not the adjusted basis must be allocated between the property that was sold and the property that was contributed. If no

---

[2] See Weber & Stevenson, "Charitable Bargain Sales and The Allowability Test—A Tax Trap," 56 Taxes 101 (February 1978).

charitable contributions deduction is *allowable*, the adjusted basis of the property does not have to be allocated, and the entire adjusted basis is used in determining the amount of gain on the sale. However, if it is determined under this regulation that the adjusted basis must be allocated, i.e., if a charitable contributions deduction is allowable, then the amount of gain is determined under section 1011(b) and section 1.1011-2(b), Income Tax Regs. The amount allowed or allowable for the charitable contribution (fair market value - amount realized) is then computed under section 170 and the regulations thereunder in the same manner as though the contribution was an outright gift to a charitable organization. This computation will then be made, in my opinion, without going back to section 1.1011-2(a)(1), Income Tax Regs.

Pursuant to section 1.1011-2(a)(1), Income Tax Regs., the adjusted basis of the property must be allocated under section 1011(b) and section 1.1011-2(b), Income Tax Regs., *only if* after applying the provisions of section 170, including the percentage limitations of section 170(b),[3] a deduction is allowable under section 170. In ascertaining whether or not a charitable contributions deduction is allowable under section 170 for the taxable year "for such purposes" (to determine whether or not the adjusted basis must be allocated pursuant to section 1011(b) and the regulations thereunder), section 170 is to be applied without regard to this regulation and the amount by which the contribution must be reduced under section 170(e)(1) is the amount determined as if the *entire property* had been sold by the donor at its fair market value at the time of the sale or

---

[3] Sec. 1.1011-2(a)(2), Income Tax Regs., provides that the basis of the property must be apportioned in the year of the bargain sale if the sale or exchange gives rise to a charitable contribution that is carried over to a subsequent taxable year, whether or not such contribution is allowable as a deduction under sec. 170 in such subsequent taxable year. Since both sec. 170(b)(1)(A) and sec. 170(b)(1)(C) allow carryovers for contributions in excess of the percentage limitations contained therein, the reference to the percentage limitations of sec. 170(b) contained in sec. 1.1011-2(a)(1), Income Tax Regs., was intended to apply with respect to bargain sales made to organizations described in sec. 170(b)(1)(B). See, i.e., sec. 1.1011-2(c), example (*3*), Income Tax Regs. However, since the Tax Reform Act of 1984, inter alia, extended the applicability of the 5-year carryover deduction under sec. 170(d) to excess contributions by individuals made to sec. 170(b)(1)(B) organizations, it is doubtful whether, under the present law, the percentage limitations of sec. 170(b) would preclude the allocation of basis under sec. 1.1011-2(a)(1), Income Tax Regs., with respect to bargain sales to any charitable organization. See generally Tax Reform Act of 1984, Pub. L. 98-369, sec. 301, 98 Stat. 777.

exchange. In other words, the adjusted basis must be allocated only if the charitable contribution (fair market value - amount realized) is greater than the reductions required under section 170(e)(1) determined by applying such section to the entire property. After satisfying this initial allowability test and determining that the adjusted basis of the property must be allocated, the taxpayer is no longer concerned with section 1.1011-2(a)(1), Income Tax Regs., and that regulation has no further applicability.

The majority has accepted the parties' litigating position that the election by petitioners under section 170(b)(1)(C)(iii) requires that the contribution portion of the bargain sale must be reduced under section 170(e)(1)(B) by taking into account the long-term capital gain attributable to the *entire property* as required by section 1.1011-2(a)(1), Income Tax Regs. I do not see the connection. I think the allowability test in which the *entire property* is considered is an earlier, preliminary test which petitioners have satisfied and that the reductions under section 170(e)(1)(B) pursuant to their election comes at a later stage and involves only the contributed portion of the property. In other words, the reduction contemplated by section 170(e)(1)(B) pursuant to petitioners' election requires only that portion of the long-term capital gain attributable to the contributed property be taken into account. While the statute and regulations are complex, a logical tracking of the Code and regulations supports my view. The method for computing the amount of long-term capital gain attributable to the contributed property is clearly set forth in section 1.170A-4(c)(3), Income Tax Regs. Indeed, an analysis of section 170(b)(1)(C) supports my interpretation.

Generally, charitable contributions to organizations described in section 170(b)(1)(A) ("50 percent charities") are allowed in any taxable year to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base[4] (adjusted gross income) for such year. However, an additional limitation is provided in section 170(b)(1)(C) with respect to contributions of certain capital gain property. Section 170(b)(1)(C) provides:

---

[4] The term "contribution base" means adjusted gross income (computed without regard to any net operating loss carryback to the taxable year under sec. 172). Sec. 170(b)(1)(E).

(C) SPECIAL LIMITATION WITH RESPECT TO CONTRIBUTIONS OF CERTAIN CAPITAL GAIN PROPERTY.—

(i) In the case of charitable contributions of capital gain property to which subsection (e)(1)(B) does not apply, the total amount of contributions of such property which may be taken into account under subsection (a) for any taxable year shall not exceed 30 percent of the taxpayer's contribution base for such year. For purposes of this subsection, contributions of capital gain property to which this paragraph applies shall be taken into account after all other charitable contributions.

(ii) If charitable contributions described in subparagraph (A) of capital gain property to which clause (i) applies exceeds 30 percent of the taxpayer's contribution base for any taxable year, such excess shall be treated, in a manner consistent with the rules of subsection (d)(1), as a charitable contribution of capital gain property to which clause (i) applies in each of the 5 succeeding taxable years in order of time.

(iii) At the election of the taxpayer (made at such time and in such manner as the Secretary prescribes by regulations), subsection (e)(1) shall apply to all contributions of capital gain property (to which subsection (e)(1)(B) does not otherwise apply) made by the taxpayer during the taxable year. If such an election is made, clauses (i) and (ii) shall not apply to contributions of capital gain property made during the taxable year, and, in applying subsection (d)(1) for such taxable year with respect to contributions of capital gain property made in any prior contribution year for which an election was not made under this clause, such contributions shall be reduced as if subsection (e)(1) had applied to such contributions in the year in which made.

(iv) For purposes of this subparagraph, the term "capital gain property" means, with respect to any contribution, any capital asset the sale of which at its fair market value at the time of the contribution would have resulted in gain which would have been long-term capital gain. For purposes of the preceding sentence, any property which is property used in the trade or business (as defined in section 1231(b)) shall be treated as a capital asset.

Thus, section 170(b)(1)(C)(i) limits the total amount of contributions of capital gain property *to which subsection (e)(1)(B)* does not apply that may be taken into account each year to 30 percent of the taxpayer's contribution base (adjusted gross income). Section 170(b)(1)(C)(ii) provides that contributions of capital gain property exceeding that 30-percent limitation are carried over to subsequent years as contributions of capital gain property in a manner consistent with section 170(d).

However, in lieu of accepting this 30-percent limitation for contributions of capital gain property, a taxpayer may make an election under section 170(b)(1)(C)(iii) to apply

section 170(e)(1) to all contributions of capital gain property (*to which subsection (e)(1)(B) does not otherwise apply*) made by the taxpayer during the taxable year.[5] If the election is made, the taxpayer must reduce the amount of the charitable contributions deduction otherwise allowable under section 170(b)(1)(C) by 50 percent of the gain that would have been long-term capital gain if the contributed property had been sold by the taxpayer at its fair market value determined at the time of such contribution.[6] The effect of the election is twofold: First, the election removes the otherwise allowable charitable contribution from the 30-percent limitation under section 170(b)(1)(C) and removes the capital gain property taint from the contribution.[7]

With respect to a bargain sale transaction, to accept the position that an election under section 170(b)(1)(C)(iii) requires the application of section 170(e)(1)(B) in accordance with section 1.1011-2(a)(1), Income Tax Regs., is simply, in my opinion, an erroneous application of the statute and the regulations. Both section 170(b)(1)(C)(iii) and section 1011(b) (and section 1.1011-2(a)(1), Income Tax Regs.) require reductions under section 170(e)(1). However, when interpreted and applied in the proper sequence within the entire statutory and regulatory framework, these two reductions operate in different spheres and are, in my opinion, mutually exclusive. I will demonstrate below what I believe to be the proper sequence and proper application of the statute and regulations.

---

[5] In addition, the election may be made with respect to contributions of 30-percent capital gain property carried over to the taxable year even though the individual has not made any contribution of 30-percent capital gain property in such year. Sec. 1.170A-8(d)(2)(i)(*a*), Income Tax Regs. Note that the reference in this regulation to the election under sec. 170(b)(1)(iii) bears the old numbering of what is now sec. 170(b)(1)(C)(iii).

[6] It should be emphasized that an election under sec. 170(b)(1)(C)(iii) applies to all contributions of capital gain property *to which subsec. (e)(1)(B) does not otherwise apply* made during the year of the election. In addition, in applying the carryover provisions of sec.170(d) for the year of the election with respect to contributions of capital gain property made in any prior contribution year for which an election was not made, such contributions shall be reduced as if subsec. (e)(1) had applied to such contributions in the year in which made. Sec. 170(b)(1)(C)(iii) (last sentence).

[7] Removing the capital gain property taint from the contribution means that after applying sec. 170(e)(1)(B) as required by the election, clauses (i) and (ii) of sec. 170(b)(1)(C) are no longer applicable to contributions of capital gain property made during the taxable year. In other words, these contributions are then treated as contributions subject to the 50-percent limitation under sec. 170(b)(1)(A), and any amount in excess of this 50-percent limitation is carried over to subsequent years under sec. 170(d) as a sec. 170(b)(1)(A) contribution rather than as a sec. 170(b)(1)(C) contribution.

In a bargain sale transaction, section 170(e)(1) is applied under section 1.1011-2(a)(1), Income Tax Regs., to reduce the amount of the charitable contribution (fair market value - amount realized). The purpose of this initial application is to determine whether or not any charitable contributions deduction is allowable so that the basis of the property must be apportioned as provided in section 1011(b) and section 1.1011-2(b), Income Tax Regs. This is what is referred to above as the allowability test for the particular piece of property. Indeed, section 1.1011-2(a)(1), Income Tax Regs., by clear and unambiguous language specifically limits the application of section 170(e)(1) *for such purposes*. After this initial allowability determination has been made for the particular piece of property, section 1.1011-2(a)(1), Income Tax Regs., has no further applicability. In contrast, the reductions contemplated by section 170(e)(1)(B) pursuant to an election under section 170(b)(1)(C)(iii) apply to all contributions of capital gain property made during the taxable year. The position advanced by the parties as their litigating position and accepted by the majority necessitates a different treatment for contributions of capital gain property to which the election applies depending on whether such contributions were outright gifts or were made in connection with a bargain sale. I do not think that the election under section 170(b)(1)(C)(iii) was ever intended to draw such a distinction. Indeed, in the absence of an election, the amount of the contribution of capital gain property that is not otherwise subject to section 170(e)(1)(B) (and the only capital gain property to which an election could apply) is fixed and ascertained and is otherwise allowable under section 170(b)(1)(C) subject only to the percentage limitations contained therein. The interpretation accepted by the majority requires a quantum leap backward from section 170(b)(1)(C)(iii) back to section 1.1011-2(a)(1), Income Tax Regs., which I do not think is mandated either by the statute or the regulations. Having once satisfied section 1011(b) and section 1.1011-2(a)(1), Income Tax Regs., in the initial determination that some charitable contribution is allowable and that basis must be allocated, there is no need to return to section 1.1011-2(a)(1). I think the election under section 170(b)(1)(C)(iii) requires the application

of section 170(e)(1)(B) computed under section 1.170A-4(c)(2) and (3), Income Tax Regs., and not under section 1011-2(a)(1), Income Tax Regs. Thus only the property contributed in the bargain sale is taken into account in that computation. Accordingly, I would analyze the instant case in the following manner.

Petitioners in the instant case sold capital gain property to a section 170(b)(1)(A) organization for the amount of $941,684. The fair market value at the time of the sale was $1,106,478, resulting in a charitable contribution of $164,794. The taxpayer's basis in the property was $654,632 that reflected the potential recapture of depreciation in the amount of $43,392. However, since neither the majority opinion nor the parties' briefs otherwise indicate, it is assumed that no portion of this depreciation will be treated as ordinary income on disposition of the property.

My analysis begins with section 1.1011-2(a)(1), Income Tax Regs., since the transaction was a bargain sale to a charitable organization. Under section 1.1011-2(a)(1), Income Tax Regs., it must be determined whether or not any charitable contributions deduction is *allowable* under section 170. If a deduction is allowable under section 170, *then* the basis of the property must be allocated between the sale portion and the contributed portion of the bargain sale. In making this initial determination, the contribution of property must be reduced under section 170(e)(1), determined *as if* the entire property had been sold by the donor at its fair market value at the time of the sale. This is the mandatory reduction under section 170(e)(1). The taxpayer made a charitable contribution in the amount of $164,794 (1,106,478 fair market value - 941,684 amount realized). If the property had been sold at its fair market value at the time of its contribution, $451,846 of gain would have been realized. However, since no part of this gain would have been ordinary income, no mandatory reduction is required under section 170(e)(1)(A). Moreover, at this stage, no mandatory reduction is made under section 170(e)(1)(B) since that section does not otherwise apply.[8] Accordingly, after apply-

---

[8] Sec. 170(e)(1)(B) does not apply because (1) any part of this contribution that consisted of tangible personal property is not used by the donee in a manner unrelated to the purpose or function constituting the basis for its exemption under sec. 501, and (2) the donee was not a

ing section 1.1011-2(a)(1), Income Tax Regs., a charitable contributions deduction in the amount of $164,794 is allowable under section 170 subject only to the percentage limitations of section 170(b), and the basis of the property must be apportioned. At this point, section 1.1011-2(a)(1), Income Tax Regs., has no further applicability and the provision in regard to the gain on the *entire property* has served its limited purpose. Petitioners have passed this initial allowability test, and basis of the particular property must now be allocated.

Pursuant to section 1011(b) and section 1.1011-2(b), Income Tax Regs., petitioners have an adjusted basis of $552,133 for the part of the property constituting the sale (adjusted basis × amount realized/fair market value of entire property) (654,632 × 941,684/1,106,478), resulting in a total gain of $384,551 (941,684 – 557,133), all of which is long-term capital gain. Under section 1.170A-4(c)(2)(i), Income Tax Regs., petitioners' adjusted basis for the property contributed is $97,498 (adjusted basis × fair market value of contributed property/fair market value of entire property) (654,632 × 164,794/1,106,478). Basis having now been allocated, the next step is to compute the amount of the charitable contributions deduction to be allowed.

The charitable contribution of $164,794 (fair market value – amount realized) is now treated essentially in the same manner as an outright gift of capital gain property to an organization described in section 170(b)(1)(A). Accordingly, the fair market value of the contributed property must be reduced by the amounts required under section 170(e)(1). If the contributed property had been sold at its fair market value, the taxpayer would have realized a total gain of $67,296 (164,794 – 97,498) all of which would have been long-term capital gain. Sec. 1.170A-4(c)(3), Income Tax Regs. Since no part of this gain attributable to the contributed property would have been ordinary income, no reduction is required under section 170(e)(1)(A). Moreover, no reduction is necessary under the express language of section 170(e)(1)(B), since that section does not otherwise apply. At this stage, petitioners are otherwise allowed a

---

private foundation as defined in sec. 509(a) other than a private foundation described in subsec. (b)(1)(D).

charitable contributions deduction of $164,794 subject to the 30-percent limitation under section 170(b)(1)(C). However, petitioners have elected to have section 170(e)(1) apply to all of their contributions of capital gain property made in the year 1977, and the only contribution of capital gain property is this amount of $164,794.

Accordingly, the amount of $164,794 is reduced under section 170(e)(1)(B) by 50 percent of the gain that would have been long-term capital gain if the contributed property had been sold at its fair market value at the time of the contribution. However, at this stage we do not go back to section 1.1011-2(a)(1), Income Tax Regs., because basis has already been allocated. Thus, the $164,794 is reduced by the amount of $33,648 (50 percent of 67,296) (451,846 × 164,794/1,106,478) (long-term capital gain × fair market value of contributed property/fair market value of entire property). This gives petitioners a deduction in the amount of $131,146 for the contributed portion of the bargain sale, subject to the percentage limitations of section 170(b)(1)(A).[9] This charitable contributions deduction can be carried over from the year of the bargain sale (1977) to the years before the Court (1978 and 1979). This would also mean that an adjustment would have to be made to the sale portion since respondent in the statutory notice of deficiency allocated all of the basis to the sale portion, thus decreasing the amount of petitioners' taxable gain.

I would hold for petitioners by applying the pertinent statutory and regulatory provisions in the sequence indicated above, thus pretermitting any determination of the validity of the regulations. Accordingly, while I agree with Judge Whitaker's views, I concur with the majority solely as to the result the majority reached. However, since the majority has chosen to invalidate the regulations, I join in Judge Whitaker's dissent.

---

[9] While I have discussed what I call "the parties' litigating position" (and the basic premise of the majority opinion), I think my position is the same as petitioners' alternative argument which is alluded to but not well articulated in petitioners' brief. I believe my position was also anticipated in an early article discussing what was then the proposed regulations under the 1969 Tax Reform Act. See Whitaker, "Dealing with Outright Gifts to Charity in Kind," 30th Annual N.Y.U. Institute 45, 64-73 (1972).

WHITAKER, *J.*, agrees with this concurring and dissenting opinion.

---

WHITAKER, *J.* concurring and dissenting: I agree with Judge Parker's well-reasoned concurrence. The application of the statute and the regulations which she advocates is reasonable, well justified under the ambiguous statute here involved, and responds to our obligation to so interpret regulations as to uphold their validity. See *United Telecommunications, Inc. v. Commissioner*, 589 F.2d 1383, 1390 (10th Cir. 1978); *Miller v. Commissioner*, 84 T.C. 827, 845 (1985), on appeal (10th Cir., Nov. 20, 1985). However, the majority has apparently concluded that Judge Parker's analysis is incorrect. Thus, without, in my judgment, an adequate basis therefor, the Court invalidates these longstanding regulations. I must respectfully dissent from the majority's reasoning. Were it necessary to reach the opposite result in order to avoid invalidation of the regulations, I believe we should do so.

When called upon to interpret respondent's regulations, we have been charged by the U.S. Supreme Court time and again to refrain from substituting our judgment as to reasonableness for that of the Secretary. See, e.g., *United States v. Correll*, 389 U.S. 299 (1967); *Bingler v. Johnson*, 394 U.S. 741 (1969); *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472 (1979). The majority recognizes that the congressional intent is far from clear, that the regulations were issued "soon after enactment of the statutory provisions" (specifically in 1972) and that Congress has revisited this area on a number of occasions without any adverse comment with respect to the regulations. I have no disagreement with the majority's enunciation of the proper standard to apply; I simply disagree that the majority has correctly applied that standard.

In *National Muffler Dealers Association, Inc. v. United States, supra* at 477, Justice Blackmun said:

In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its

purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute. [Citations omitted.]

The majority's interpretation may well be a more reasonable interpretation of the statute than respondent's, but that is immaterial. In my judgment, since the majority declines to accept Judge Parker's analysis, the Court should exercise judicial restraint and look to Congress for clarification of the statute.

PARKER, *J.*, agrees with this concurring and dissenting opinion.