UNITED TELECOMMUNICATIONS, INC. (formerly United Utilities, Incorporated), Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 77–1392.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 25, 1978.
Decided Dec. 29, 1978.

. William H. Curtis, Kansas City, Mo. (George F. Crawford and Allan W. Stopperan, Kansas City, Mo., on the brief), for appellant.

Stanley S. Shaw, Jr., Tax Div., Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., and Gilbert E. Andrews, Washington, D.C., on the brief), for appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

United Telecommunications, Inc. here seeks review of a decision of the Tax Court ruling against it in a dispute in which the Commissioner acted in accordance with Treas.Reg. § 1.46–3(c)(1). This provides in pertinent part:

> . . . the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to any other property used in the construction, reconstruction, or erection of such new section 38 property.

The taxpayer-petitioner's legal position here, as it was before the Tax Court and the Commissioner, is that the above-quoted regulation is invalid, the consequence of which would be that the exclusion by the Commissioner and the Tax Court of capitalized depreciation from taxpayer's investment credit basis was not justified. We disagree with taxpayer's contention. We affirm the Tax Court.

The facts were for the most part stipulated. The taxpayer, a Kansas corporation, has a number of operating subsidiaries incorporated in various states. Consolidated returns were filed by taxpayer in conjunction with the subsidiaries in 1964 and 1965, which are the taxable years here in question.

The subsidiaries use their own equipment to construct new property. Under the applicable state and federal regulatory provisions, they are required for financial accounting to capitalize the depreciation of this construction equipment as part of the cost basis of the newly constructed property. It became clear after the Supreme Court's decision in *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974), that in order to compute depreciation for tax purposes, the depreciation on the construction equipment had to be capitalized and recovered as part of the cost of the constructed property.

The taxpayer did capitalize the depreciation on the construction equipment as part of the basis of the constructed property and used that basis in computing the investment tax credit. The taxpayer also claimed investment tax credit on the cost of the construction equipment when it qualified. The result was that the taxpayer frequently claimed a double credit for the same expenditure, once for construction equipment, and also as allocated cost of the constructed property.

The Commissioner disallowed this attempt to obtain a double investment tax credit as being in direct conflict with the regulation quoted above. The taxpayer filed a petition in the Tax Court to contest the deficiencies which were ruled to exist by the Commissioner.

The Tax Court also refused to permit the double credit. *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278 (1975). The majority upheld the regulations in question, Treas.Reg. §§ 1.46–3(c)(1) and 1.48–1(b)(4), to the extent that they were applicable in this case and prohibited the taxpayer, when computing the investment tax credit, from increasing the basis of the constructed property by cost allocated from the construction equipment on which the taxpayer had already taken an investment tax credit. Treas.Reg. § 1.46–3(c)(1) was partly invalidated by the majority, but only to the extent that it prevented the cost of the constructed property from including any depreciation attributable to construction equipment when there had been no investment tax credit allowed on the equipment.

Five Tax Court judges concurred in the result. Their view was that the regulation should have been fully upheld. Their view was, also, that the two regulations should have been read together and that the ambiguities should have been construed so as to hold the regulations valid.

The Commissioner had computed deficiencies of $5,963.21 for 1964 and $83,575.92 for 1965.[1] The taxpayer's approach to the deficiencies was to take an additional credit when the construction equipment had not received the maximum amount of credit. Where the construction equipment had a useful life of less than eight years, the taxpayer contended that part of the investment in such equipment failed to qualify for the credit. It then argued that the investment portion which failed to qualify should have been considered as part of the capitalized cost of the constructed property, whereby credit available on the construction of the property would be increased.[2]

The taxpayer's argument was rejected by the Tax Court in a supplemental opinion, which upheld the Commissioner's computation. *United Telecommunications, Inc. v. Commissioner*, 67 T.C. 760 (1977). The regulations were found in this connection to be valid and to prohibit the taxpayer's method of computation.

The claim of the taxpayer here is that the regulation (Treas.Reg. § 1.46–3(c)(1)) is invalid because it excluded capitalized depreciation from the basis of constructed property, which is used to calculate the investment tax credit on the constructed property.

Exclusion of the capitalized depreciation from basis is said to be in conflict with the intention of Congress in using the word "basis" in § 46(c)(1)(A). This provides that "qualified investment" (which amount is used to calculate the investment tax credit) is the aggregate of "the applicable percentage of the basis of each new section 38 property. . . ." The term "basis," it is further argued, is here used in its ordinary and customary sense, which includes capitalized depreciation. A further argument is that the basis of a self-constructed asset, for depreciation purposes, necessarily includes the capitalized depreciation from the construction equipment. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974).

Therefore, the thrust of the taxpayer's argument is allowance of a double investment tax credit on the same cost outlay, since it allows the credit to be taken on the construction equipment and again on the cost of that equipment which has been allo-

---

1. In addition to the investment tax credit, the deficiencies include items which were settled by the parties.

2. For example, if all the cost of the construction equipment A (useful life of four years) were to be capitalized in the constructed property B (useful life of eight years), the taxpayer argues that one-third of the cost of property A should be eligible for investment tax credit on property A and the remaining two-thirds of the cost of property A should be included in the cost of property B, which is used to compute the credit on property B.

cated as capitalized depreciation to the cost of the constructed property. The result is that both the construction equipment and the constructed property are treated as § 38 property and hence eligible for investment tax credit.

The Commissioner's position is that since the double investment tax credit could not be claimed, the regulations should be held valid to the extent that they prohibited such a double credit. Where both construction equipment and construed property qualified for the credit, the Tax Court upheld the regulation and in doing so forced the taxpayer to compute the credit on the construction equipment. On the other hand, the taxpayer was allowed to include capitalized depreciation on construction equipment which is ineligible for the credit as part of the cost of the constructed property used to compute the credit on the constructed property. Therefore, if the construction equipment failed to qualify for the credit, the taxpayer could still realize the credit by capitalizing the cost of the construction equipment in the cost of con-structed property which qualified. The majority of the Tax Court invalidated the regulation to the extent that it would deny any credit in this latter situation.

The Commissioner maintains that insofar as the regulations forbid double investment credit, they are reasonable and consistent with the statute and therefore it is proper that they be upheld. The Commissioner further points out that the regulations are consistent with his broad authority to carry out statutory purposes through regulations and his specific authority to promulgate regulations in the investment tax credit area under § 38(b).

Even if a double credit is prohibited, the taxpayer argues, he should be allowed to obtain the maximum credit for such expenditure where the constructed property has a longer useful life than the construction equipment. The Tax Court held that it is not permissible to have an investment tax credit computed in part on the construction equipment and in part on the constructed property, whereby the taxpayer received the benefit of the longer useful life of the constructed property. The Commissioner's objection is that such a computation is not justified by the statute or the regulation.

The stated purpose of the Revenue Act of 1962 was to encourage modernization and expansion of productive facilities, stimulate economic growth, increase job opportunities, and improve the balance of payments.[3] The effect of the investment tax credit was to reduce federal income taxes which Congress hoped would result in an increase in capital investment.

Section 38 allowed a credit for investment in certain depreciable property called "section 38 property." The amount of this was equal to 7% of the taxpayer's "qualified investment" as that term was defined in § 46(a)(1). As a result of the taxpayer here being a public utility, the credit is limited to 3% by § 46(c)(3), which provides that for public utilities the amount of the qualified investment is $3/7$ of the amount determined under § 46(c)(1). By multiplying $3/7$ times the 7% credit generally available, the effect is a 3% credit for public utilities. The total depreciation allowed was 100% for property with a useful life of eight years or more, 66⅔% for property with a useful life of six years or more but less than eight years, and 33⅓% for property with a useful life of four years or more but less than six years.

The issue here is transportation and construction equipment having different useful lives, which qualifies as § 38 property and is thus eligible for the credit. The equipment is used to construct facilities which qualify as § 38 property and are also eligible for the investment tax credit. The constructed property here had useful lives of more than eight years at the time that it was placed in service and thus is eligible for the maximum investment tax credit.

3. H.Conf.Rep. No. 2508, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Admin. News, pp. 3732, 3734; S.Rep. No. 1881, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Admin.News, pp. 3297, 3313–14; H.R. Rep. No. 2518, 87th Cong., 2d Sess., 1962–3 C.B. 405, 411.

The Supreme Court in *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974), determined that construction equipment had to be capitalized in determining the basis for depreciation of constructed property. However, the case did not determine our present problem. The reason for the *Idaho Power Co.* decision was that capitalization in the basis of the constructed property was the generally accepted method of accounting and the method required by the regulatory agencies. The Supreme Court also stressed that capitalization clearly reflected income. These reasons, however, do not finally resolve the treatment of basis for investment tax credit because this was developed as a credit and not as a deduction to reduce federal income taxes. The accounting mechanics of investment tax credit were debated for many years and it does not resolve the proper basis for calculating the credit for tax purposes.

The Commissioner's position, as we have indicated above, is that the regulations in question are valid insofar as they prevent a double investment tax credit. Treas.Reg. § 1.48–1(b)(4) provides:

If depreciation sustained on property is not an allowable deduction for the taxable year but is added to the basis of property being constructed, reconstructed, or erected by the taxpayer, for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable for the taxable year with respect to the property on which depreciation is sustained. Thus, if $1,000 of depreciation sustained with respect to property no. 1, which is placed in service in 1964 by taxpayer A, is not allowable to A as being constructed by A (property no. 2), for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allow-

able to A for 1964 with respect to property no. 1. However, the $1,000 amount is not included in the basis of property no. 2 for purposes of determining A's qualified investment with respect to property no. 2. See paragraph (c)(1) of § 1.46–3.

■ The approach to consideration of validity of Treasury regulations requires that the validity of such regulations be presumed. It has been said that they " 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.' " *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978); *Bingler v. Johnson*, 394 U.S. 741, 750, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). The regulations are not to be invalidated except for weighty reasons. This court has applied the standard applicable in considering Treasury regulations. *Marshall v. Commissioner*, 510 F.2d 259, 262 (10th Cir. 1975); *Estate of Whitlock v. Commissioner*, 494 F.2d 1297, 1300 (10th Cir. 1974), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594 (1977); *Harper Oil Co. v. United States*, 425 F.2d 1335, 1343 (10th Cir. 1970).

■ The Treasury has broad authority from Congress to issue regulations pursuant to § 7805. Moreover, Congress has given the Treasury Department legislative authorization in § 38(b) to issue regulations pertaining to investment tax credit. Where, as here, the regulations have been issued pursuant to specific legislative authorization, the presumption of validity is even greater.

■ The purpose of the Treasury regulations now under consideration is clearly to prevent a taxpayer from taking double tax credit of the kind which the taxpayer in this case is seeking.[4] The statutory language applicable to the present subject does not contain a specific prohibition against a double credit. Nevertheless, the presump-

---

4. Another possible reason for the regulation, which has not been articulated by either the Commissioner or the Tax Court, is that the regulation may simplify recordkeeping and administration for this particular tax law. By requiring the credit to be taken on the construction equipment, when it is section 38 property, the credit applies to one property, whose acquisition, existence, and disposition can be relatively easily established. The credit is not based on the cost of the construction equipment after it has been allocated, either entirely or partially, to what may amount to a considerable number of construction projects, which may or may not result in § 38 property.

tion in interpreting the statute and the regulations promulgated under the statute is opposed to such a double credit. The presumption is that statutes and regulations do not allow a double deduction. *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68, 54 S.Ct. 346, 78 L.Ed. 544 (1934). Indeed the rule is that there must be a specific statutory provision authorizing a double deduction in order for it to be permissible. The reasoning is that a statute is not to be construed to allow a double deduction or credit which would reduce the federal income tax for one taxpayer.

■ Had Congress wished to provide the double credit the taxpayer seeks, it could easily have drafted a 6% credit instead of the 3% provided for public utilities. It nevertheless expressly provided a lesser credit for public utilities (3%) instead of the higher credit applicable to other industries, which was 7%. A 6% credit for utilities generally would undoubtedly be a more equitable way to provide double credit had Congress intended to do so rather than providing a double credit for those utilities who happen to use § 38 property for the purpose of constructing more § 38 property.

The argument that Congress would not object to a double credit inasmuch as it would stimulate more investment than a single credit does not persuade us. It was up to Congress to provide a double credit to stimulate investment had it been so minded.

It is necessary to discuss the two approaches which were taken by the Tax Court. Under either of these views, the one being the upholding of the regulations, the other the invalidating of one of the regulations to a limited extent, the federal tax consequences are the same. The taxpayer in each instance is denied double investment tax credit on the same capital outlay.

The majority of the court ruled that Treas.Reg. § 1.48–1(b)(4) was valid because

of its reasonableness and consistency with the statute and because, as a practical matter, it would operate to prevent gross abuses. As to Treas.Reg. § 1.46–3(c)(1), the majority held that this was valid to the extent that it prevented a double credit by claiming investment tax credit on both the construction equipment and the constructed property. To that extent, Treas.Reg. § 1.46–3(c)(1) is reasonable and consistent with the purposes of the statute. The majority further held that Treas.Reg. § 1.46–3(c)(1) was invalid to the limited extent that the regulation excluded from the basis of constructed new § 38 property the depreciation sustained with respect to construction equipment on which no § 38 credit had been allowed.

The minority, or judges who concurred, would not have held any part of either of the regulations invalid because they were not shown to have been plainly inconsistent with the statute. 65 T.C. at 289–90. The concurring group of judges found that the two regulations, Treas.Reg. §§ 1.46–3(c)(1) and 1.48–1(b)(4), had to be construed *in pari materia*, since it was apparent on the face that they were intended to be so construed. Considering them together, it was said that it was clear that they were intended only to disallow double credit and to advise the taxpayer which property to claim the credit on rather than to deny any credit at all. 65 T.C. at 292.

According to the concurring viewpoint, the regulations deal only with the limited situation involving construction equipment which is § 38 property. In this case the regulations require the investment tax credit to be computed on the construction equipment even though the constructed property can also qualify as § 38 property.[5] The regulations, according to the concurring judges, do not attempt to deny investment tax credit on the constructed property including the cost allocated from the con-

5. The regulation can be a benefit or a detriment to the taxpayer depending on the useful lives of the two properties. If the construction equipment has a longer useful life than the constructed property, a higher applicable percentage may apply because of the regulation, and

the taxpayer would receive a higher credit. If the construction equipment has a shorter useful life than the constructed property, the taxpayer may not receive the maximum credit on the expenditure for the construction equipment. The latter applies to this taxpayer.

struction equipment when the construction equipment does not qualify as § 38 property. Thus the concurring opinion construes the ambiguous regulation so that it is not plainly inconsistent with the statute.

The majority of the court ruled that Treas.Reg. § 1.46–3(c)(1) sought to cover the situation when the construction equipment was not § 38 property and was invalid to the extent that it did so. Denial of investment tax credit on constructed property which is § 38 property, because the construction equipment was not § 38 property, would treat the taxpayer who purchases and the taxpayer who constructs the property differently and would be contrary to the statute, since it would deny investment tax credit to property which qualifies for it. Furthermore, it would deny the tax parity for purchasers and constructors, which the Supreme Court has discussed in relationship to depreciation. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974).

· Both of the opinions of the Tax Court determine that there is support for the regulations growing out of the failure of Congress to change the applicable statutory language (and therefore the regulations) during subsequent years when it was making other changes in the investment tax credit. During the 13 years that the regulations have been in effect the investment tax credit was suspended, restored, repealed, reenacted, and substantially broadened. These actions required Congress to deal with basic problems, and yet no change in the applicable statutory language has taken place during all of the 13-year period.

Congress was not oblivious to the necessity for preventing multiple credits. Indeed § 47 provides for recapture (that is to say, certain increases in taxes) where change occurred in the ownership of the property or the property ceased to be so-called § 38 property prior to the expiration of the useful life which was used to compute the investment tax credit. The purpose of this was to obviate quick turnovers of assets by

those who were seeking to make excessive use of multiple credit.[6] Accordingly, when a taxpayer sells or exchanges § 38 property before the termination of its useful life, the recapture provisions can result in increased taxes.

There are other instances in which the Congress has acted for the purpose of preventing a double credit. One such example was in connection with § 48(c)(3)(B) to prevent a double allowance of investment tax credit in connection with trades of used property.

There are other double credit situations in which Congress made provision for reduction in basis for insurance proceeds. However, this was repealed in favor of making it subject to recapture. It could be argued that this is a double-edged sword. If Congress was so conscious of this, why didn't it close up this present crack? We are persuaded, however, that it is more cogent to conclude that Congress was cognizant of the problem and was not necessarily able to cover every possibility.

The Tax Court considered legislative history of a similar section, § 46(d)(3), which was effective for the taxable years ending after December 31, 1974. The state of mind of Congress is evidenced somewhat by what they did here, because they showed an intent to prevent the obtaining of double credit in circumstances not unlike the present one. This has some probative value here.

\* \* \*

The taxpayer argues that the use of the word "basis" in the investment tax credit statute necessarily includes capitalized depreciation from the construction equipment. It maintains that this result is required either because that is the word's meaning in its ordinary and customary sense or because that is the meaning applied by the Supreme Court in determining depreciable basis in *Idaho Power Co., supra.* Even if the use of the word "basis" in the statute is somewhat ambiguous or inconsistent with the mean-

---

6. S.Rep. No. 1881, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Admin.News, pp. 3297, 3320; H.R.Rep. No. 1447, 87th Cong., 2d Sess., 1962–3 C.B. 405, 417.

ing of basis in other contexts, like depreciation, the term "basis" cannot be construed to achieve a result, a double credit, which is contrary to what Congress intended. *See Estate of Whitlock v. Commissioner*, 494 F.2d 1297, 1300 (10th Cir. 1974), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594 (1977).

The taxpayer relies on the decision in *Walt Disney Productions v. United States*, 480 F.2d 66 (9th Cir. 1973), *cert. denied*, 415 U.S. 934, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974) for its determination of basis. The Ninth Circuit there held that the basis was to include the whole cost of the property produced (motions picture negatives) and the taxpayer was entitled to use its depreciable basis to compute investment tax credit. *Id.* at 69. The opinion did not say that this cost included depreciation on § 38 property and so presented the possibility of a double credit. The court did not invalidate the regulations under consideration or even consider them, so the possibility of a double credit to all outward appearance was not present.

In sum: ·

To the extent then that the regulations operate to prevent the double investment tax credit, they are reasonable, consistent with the statute and in harmony with congressional purpose and hence valid.

 The preferred view, as we see it, is expressed in the concurring opinion of the Tax Court which does not invalidate either of the two regulations to any extent. The ambiguity in the regulations can be eliminated and the regulations can be upheld by following the congressional intent underlying the statute. Where there is an interpretation of an ambiguous regulation which is reasonable and consistent with the statute, that interpretation is to be preferred.

If the two regulations are read together and are treated as addressing the situation where the construction equipment is § 38 property (rather than nonqualifying property), the regulations are reasonable and consistent with the statute. The treatment of investment tax credit applied by the regula-

tions in such cases presents a reasonable method of preventing the abuses that could result from permitting a double investment tax credit contrary to congressional intent.

 The Tax Court properly rejected taxpayer's alternative argument which would have allowed taxpayer to maximize the investment tax credit by computing the credit in part on the construction equipment and in part on the constructed property, whereby it would receive the benefit of the longer useful life. The taxpayer argues that this method of computation, although clearly not in accordance with the regulations, should be acceptable because the result is not a double credit on the cost expenditure for the construction equipment. The result is, however, that the maximum credit is obtained on the construction equipment even though the useful life of the construction equipment entitles it by statute to less than the maximum credit.

· The effect in computing the credit (ignoring recapture potential) is similar to capitalizing all the cost of the construction equipment in the cost of the constructed property and basing the credit on the constructed property. This is not the method of computation established by the regulations where both the construction equipment and the constructed property qualify as § 38 property. Since the regulations are reasonable, they should not be invalidated to the extent necessary to permit this proposed computation.

The taxpayer fails to mention how the investment tax credit should be computed when the construction equipment has a *longer* useful life than the constructed property. A taxpayer would no doubt argue (and correctly so) that the regulations allow a taxpayer to take advantage of the longer useful life of the construction equipment. Certainly a taxpayer would object if forced to recapture investment tax credit because part of the cost of the construction equipment was allocated to a constructed property with a shorter useful life. Thus,

the effect of the taxpayer's proposal would be to maximize the credit and benefit from the longer useful life of the two § 38 properties.

The Tax Court's decision is approved, and the same is affirmed. We note, however, that our opinion has a slight difference from that of the Tax Court in that we have preferred the upholding of both of the Treasury regulations here in question as being consistent and reasonable with the statute. This difference in interpretation does not affect the result.