HBE CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 31278-84.          Filed July 13, 1987.

---

*Robert W. Hoffman*, for the petitioner.
*Steven W. LaBounty*, for the respondent.

OPINION

GERBER, *Judge*: Respondent determined a deficiency of $392,481 in petitioner's Federal income tax for the taxable year ended December 31, 1980. The issue for our consideration involves the computation of the "minimum tax." More specifically we are asked to redetermine whether petitioner may use income tax credits to reduce the amount of tax preference determined under the alternative formula (found in section 1.57-1(i)(2)(i), Income Tax Regs.) for computing a corporate capital gain item of tax preference under section 57(a)(9)(B).[1]

This case was submitted fully stipulated under Rule 122, and the stipulation of facts is incorporated by this reference. Petitioner is a Delaware corporation which had its principal place of business in St. Louis, Missouri, at the time its petition was filed. A timely 1980 consolidated Federal corporate income tax return was filed with the Internal Revenue Service Center, Kansas City, Missouri.

Petitioner, for the 1980 taxable year, realized and reported on Schedule D of its corporate return (Form 1120) $9,600,701 of net capital gain. Total taxable income of $10,035,963 was reported for the 1980 taxable year. Without application of section 1201(a), petitioner's tax, as computed under section 11 (on its taxable income of $10,035,963) would have been $4,597,293, as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.

| | |
|---|---:|
| 17 percent of $25,000 ..................................... | $4,250 |
| 20 percent of $25,000 ..................................... | 5,000 |
| 30 percent of $25,000 ..................................... | 7,500 |
| 40 percent of $25,000 ..................................... | 10,000 |
| 46 percent of $9,935,963................................... | 4,570,543 |
| Total ....................................... | 4,597,293 |

However, by using the alternative capital gain tax computation under section 1201(a),[2] petitioner's income tax for the 1980 taxable year (before considering credits) was $2,869,167, computed at Part IV of Schedule D (Form 1120), as follows:

| | |
|---|---:|
| Taxable income......................................... | $10,035,963 |
| Net capital gain ........................................ | 9,600,701 |
| Difference............................................. | 435,262 |
| Partial tax on income of $435,262........................... | [3]180,971 |
| 28 percent of net capital gain of 9,600,701.................. | 2,688,196 |
| Alternative tax (sum of partial tax and 28% of net capital gain)............................................... | 2,869,167 |

Petitioner further reduced its reported income tax liability of $2,869,167 by tax credits totaling $2,186,855, including an investment credit of $2,021,999[4] and a jobs credit of

[2] Sec. 1201(a) provides as follows:

SEC. 1201(a). CORPORATIONS.—If for any taxable year a corporation has a net capital gain, then, in lieu of the tax imposed by sections 11, ·511, 821(a) or (c) and 831(a), there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a tax computed on the taxable income reduced by the amount of the net capital gain, at the rates and in the manner as if this subsection had not been enacted, plus

(2) a tax of 28 percent of the net capital gain.

[3] The partial tax on income of $435,262 was computed according to the rate schedule found in sec. 11, as follows:

| | |
|---|---:|
| 17 percent of $25,000 ............................................ | $4,250 |
| 20 percent of $25,000 ............................................ | 5,000 |
| 30 percent of $25,000 ............................................ | 7,500 |
| 40 percent of $25,000 ............................................ | 10,000 |
| 46 percent of $335,262 ............................................ | 154,221 |
| Total ....................................................... | 180,971 |

[4] The investment credit of $2,021,999 included a regular investment credit of $2,015,917 and a business energy investment credit of $6,082, computed as follows:

| | |
|---|---:|
| Tentative regular investment credit........................................ | $6,165,867 |
| Regular investment credit limitation ($25,000 plus 70% of income tax over $25,000) figured on an income tax of $2,869,167 ........................... | 2,015,917 |
| Allowed regular investment credit ......................................... | 2,015,917 |
| Business energy investment credit......................................... | 6,082 |
| Business energy investment credit limitation (income tax less allowed regular investment credit) figured on an income tax of $2,869,167 .................. | 853,250 |
| Allowed business energy investment credit................................... | 6,082 |
| Total allowed regular and business energy investment credit ................. | 2,021,999 |

$164,856. After applying these credits, petitioner's tax liability stood at $682,312, a figure which respondent does not herein dispute.

Petitioner was also subject in 1980 to the minimum tax imposed under section 56(a) for items of tax preference defined in section 57. Section 56(a) provides that as a general rule—

> In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every corporation, a tax equal to 15 percent of the amount by which the *sum of the items of tax preference* exceeds the greater of—
> (1) $10,000 or
> (2) the regular tax deduction for the taxable year (as determined under subsection (c)).
> [Emphasis added.]

Petitioner's only item of tax preference during 1980 was its net capital gain of $9,600,701. Section 57(a)(9)(B), provides in relevant part, that—

> In the case of a corporation having a net capital gain for the taxable year, [the amount of the item of tax preference is] equal to the product obtained by multiplying the net capital gain by a fraction the numerator of which is the *highest rate of tax specified in section 11(b)*, minus the *alternative tax rate under section 1201(a)*, for the taxable year, and the denominator of which is the *highest rate of tax specified in section 11(b)* for the taxable year. * * * [Emphasis added.]

Respondent's regulations mirror the statutory language and provide—

> that in the case of corporations there is to be included as an item of tax preference with respect to a corporation's net section 1201 gain an amount equal to the product obtained by multiplying the excess of the net long-term capital gain over the net short-term capital loss by a fraction. The numerator of this fraction is the sum of the normal tax rate and the surtax rate[5] under section 11 minus the alternative tax rate

---

[5]Under sec. 301(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2820 (the 1978 Act), the normal tax and surtax rates under sec. 11 were repealed by Congress, and replaced by a five-step graduated rate structure on corporate taxable income, applicable to tax years beginning after Dec. 31, 1978. Accordingly, under sec. 301(b)(2) of the 1978 Act, the words "the highest rate of tax specified in section 11(b)" were to be inserted in place of the phrase "the sum of the normal tax rate and the surtax rate under section 11" in each place such phrase appeared in sec. 57(a)(9)(B). However, since sec. 1.57-1(i)(2)(i) of respondent's regulations were adopted prior to the 1978 Act, and have not since been amended, the regulation continues to make reference to "the normal tax rate and the surtax rate." Nonetheless, it is understood, and the parties do not argue otherwise, that sec. 1.57-1(i)(2)(i), Income Tax Regs., is to be read as if in every place that the phrase "the sum of the normal tax rate and the

under section 1201(a) for the taxable year, and the denominator of the fraction is the sum of the normal tax rate and the surtax rate under section 11 for the taxable year. * * * [Sec. 1.57-1(i)(2)(i), Income Tax Regs.]

## However, these regulations also provide that—

In certain cases the amount of the net section 1201 gain which results in preferential treatment will be less than the amount determined by application of the statutory formula. Therefore, in lieu of the statutory formula, the capital gains item of tax preference for corporations may in all cases be determined by dividing—

(a) The *amount of tax* which would have been imposed under section 11 if section 1201(a) did not apply minus—

(b) The *amount of the taxes* actually imposed by the sum of the normal tax rate plus the surtax rate under section 11. * * *

[Sec. 1.57-1(i)(2)(i), Income Tax Regs. Emphasis added.]

Petitioner claims to have calculated its item of tax preference for capital gain pursuant to the alternative formula found in section 1.57-1(i)(2)(i), Income Tax Regs., rather than by the statutory formula found in section 57(a)(9)(B). Petitioner computed its item of tax preference for capital gain in the following manner:

| | | |
|---|---|---|
| Sec. 11 corporate tax on taxable income of $10,035,963 | $4,597,293 | |
| Less: | | |
| Investment tax credit | ([6]3,225,605) | |
| Jobs credit | (164,856) | |
| Sec. 11 corporate tax after credits | | $1,206,832 |
| Sec. 1201(a) alternative tax | 2,869,167 | |

surtax rate under section 11" now appears, the words "the highest rate of tax specified in section 11(b)," should be inserted instead. During the year in issue this rate was 46 percent.

[6]In determining its item of tax preference for capital gain, petitioner reduced its income tax liability computed under sec. 11 by an investment credit of $3,225,605 figured on an income tax liability of $4,597,293 as follows:

| | |
|---|---|
| Tentative regular investment credit | $6,165,867 |
| Regular investment credit limitation ($25,000 plus 70% of income tax over $25,000) figured on an income tax of $4,597,293 | 3,225,605 |
| Allowed regular investment credit | 3,225,605 |
| Business energy investment credit limitation (income tax less allowed regular investment credit) figured on an income tax of $4,597,293 | 1,371,688 |
| Business energy investment credit | [1]0 |
| Allowed business energy investment credit | 0 |
| Total allowed regular and business energy investment credit | 3,225,605 |

[1]Petitioner has provided no explanation of why, in computing its investment credit figured on an income tax liability of $4,597,293, it did not include the business energy investment credit of $6,082 shown on its Form 3468 attached to its 1980 corporate income tax return. (See note 4 *supra.)*

Less:

| | |
|---|---|
| Investment tax credit..................... | ([7]$2,021,999) |
| Jobs credit ............................ | (164,856) |
| Sec. 1201(a) alternative tax after credits.................. | $682,312 |
| Difference........................................... | $524,520 |
| Divided by .46........................................ | .46 |
| Tax preference for capital gain.......................... | $1,140,261 |

Accordingly, petitioner determined on Form 4626, attached to its corporate return for 1980, that it was liable for the minimum tax on tax preference items in the amount of $68,692, computed as follows:

| | |
|---|---|
| Tax preference items..................................... | $1,140,261 |
| Less regular tax deduction ............................... | (682,312) |
| Difference........................................... | $457,949 |
| Tax rate .............................................. | 15% |
| Minimum tax.......................................... | $68,692 |

Respondent, however, determined in the statutory notice of deficiency issued to petitioner that for the 1980 taxable year petitioner's item of tax preference for capital gain, as computed under the alternative formula found in section 1.57-1(i)(2)(i), Income Tax Regs., was $3,756,796, not $1,140,261, and that petitioner's minimum tax for items of tax preference was $461,173,[8] not the $68,892 listed on its corporate return.[9] Respondent arrived at a higher figure in determining the item of tax preference for capital gain

---

[7]In determining its item of tax preference for capital gain, petitioner reduced its income tax liability computed under sec. 1201(a) by an investment tax credit of $2,021,999 figured on an income tax liability of $2,869,167 as shown in note 4 *supra*.

[8]Respondent computed petitioner's minimum tax as follows:

| | |
|---|---|
| Sec. 11 corporate tax...................................... | $3,756,796 |
| Less regular tax deduction ................................. | 682,312 |
| Difference............................................. | $3,074,484 |
| Tax rate .............................................. | 15% |
| Minimum tax........................................... | $461,173 |

[9]We note that if petitioner had chosen to calculate its item of tax preference for capital gain under the statutory formula found in sec. 57(a)(9)(B) (see pages  -  *supra*), the amount of its preference would have been the same $3,756,796 as determined by respondent under the alternative formula, computed as follows:

$$\frac{\text{Highest sec. 11 tax rate} - \text{Sec. 1201(a) alternative tax rate}}{\text{Highest sec. 11 tax rate}} \times \text{Net capital gain} =$$

$$\frac{.46 - .28}{.46} \times \$9,600,701 = \$3,756,796$$

because, in contrast to petitioner, he did not reduce the "amount of tax" determined under sections 11 and 1201(a) by tax credits in making his computation. As a result, respondent's computed "difference" between the regular tax as determined under section 11 and the alternative tax as determined under section 1201(a), without factoring in tax credits, was $1,728,126, while petitioner's calculations, which did take into consideration these credits, showed a difference of only $524,520 (see page 92 *supra*). The following table demonstrates the difference in the parties' methodology:

|  | Petitioner's method[10] | Respondent's method |
|---|---|---|
| Sec. 11 corporate tax on taxable income of $10,035,963 | $4,597,293 | $4,597,293 |
| Less: | | |
| Investment tax credit | (3,225,605) | |
| Jobs credit | (164,856) | |
| Sec. 11 corporate tax after credits | 1,206,832 | |
| Sec. 1201(a) alternative tax | 2,869,167 | 2,869,167 |
| Less: | | |
| Investment tax credit | (2,021,999) | |
| Jobs credit | (164,856) | |
| Sec. 1201(a) alternative tax after credits | 682,312 | |
| Difference | $524,520 | $1,728,126 |
| Divided by .46 | .46 | .46 |
| Tax preference for capital gain | $1,140,261 | $3,756,796 |

As illustrated by the above discussion, it is respondent's position that the alternative formula as set out in section 1.57-1(i)(2)(i), Income Tax Regs., for computing, under section 57(a)(9)(B), the item of tax preference for capital gain, should not, and does not, take into consideration tax credits available to the corporation for the taxable year. Petitioner, on the other hand, contends that under the alternative formula these credits should be taken into account in arriving at the amount of the tax preference item for capital gain.

Conceptually, we recognize that the "minimum tax" was a somewhat indirect legislative attempt to remedy the actual lack of progressivity in our tax system. See S. Rept.

---
[10]See page 92 *supra*.

91-522 (1969), 1969-3 C.B. 423, 495. Certain tax benefits were identified as "tax preferences." The statutory scheme requires identification and computation of the total amount of these preferences, followed by the imposition of a minimum tax on the amount so determined. This minimum tax component is then added to the ordinary amount of tax computed under the other sections of chapter 1 of the Internal Revenue Code (Code), to arrive at a taxpayer's gross tax liability. In effect, the minimum tax is like a surtax attributable to tax preferences, to be computed totally apart, and as an addition to a taxpayer's ordinary tax liability. The issue presented herein, in its most simplified form, is essentially whether a taxpayer may double count its tax credits, by not only applying them as payments against its computed tax liability, but by also applying these same credits to reduce the amount owed on its minimum tax component as well.[11]

At first glance, the regulatory language could be read to support petitioner's position. As noted *supra* at page 91, the regulation, in describing the numerator of the alternative formula, simply makes reference to the difference between "The *amount of tax* which would have been imposed under section 11 if section 1201(a) did not apply" and "The *amount of the taxes* actually imposed," sec. 1.57-1(i)(2)(i), Income Tax Regs. (Emphasis added.) Thus, by looking at the regulation solely on its face, one could arguably interpret this language to mean the difference between the amount of tax(es) to be imposed under sections 11 and 1201(a) *after* application of allowable credits, i.e., a corporate taxpayer's bottom line tax liability in each

---

[11]Although afforded only limited probative significance, we note that the overall structure and symmetry of various Code sections would favor respondent's position and interpretation of the statutes in question. Sec. 11 provides for a tax computed upon taxable income. Similarly, sec. 56, in imposing the minimum tax add-on component, provides for the computation of a tax on tax preference items, in excess of specified amounts, which is "In addition to the other taxes imposed by this chapter." In turn, sec. 38, for example, provides for a "credit against the tax imposed" under other sections of ch. 1 (i.e., in the context of this case, secs. 11 and 56). In other words, both secs. 11 and 56 pertain to the imposition and computation of a tax upon corporations, whereas sec. 38 permits a reduction or, if you will, a means of payment of the tax. Accordingly, given the computational context of secs. 11 and 56, it would appear that in each of these sections reference is being made only to the computation of the gross amount of tax, without considering the means of payment or credits. Instead, consideration of such payments and credits has been left to other sections of the Code, to be applied as one-time offsets against a corporation's gross tax computation in arriving at a corporation's bottom line tax liability.

instance. However, when read in light of the unambiguous language of section 57(a)(9)(B), the legislative history which led to that section's adoption and the specific inequities, as detailed in the regulation's examples, which apparently caused respondent to promulgate the alternative formula found in section 1.57-1(i)(2)(i), Income Tax Regs., it becomes clear that such a view is not in harmony with the overall statutory scheme, and that the only correct interpretation is the one put forth by respondent.

Section 57, and its companion provisions sections 56 and 58, embody the so-called minimum tax on items of tax preference and were introduced into the Code by the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487. Congress recognized a need for the implementation of such a tax because—

Under [the] present law, many individuals and corporations do not pay tax on a substantial part of their economic income as a result of the receipt of various kinds of tax-exempt income or special deductions.

*    *    *    *    *    *    *

Both individuals and corporations, for example, now pay the equivalent of the regular income tax on only part of their long-term capital gains. * * *
[S. Rept. 91-522 (1969), 1969-3 C.B. 423, 495.]

The Senate Finance Committee report continues by explaining that—

The present treatment which permits individuals and corporations to escape tax on certain portions of their economic income results in an unfair distribution of the tax burden. This treatment results in large variations in the tax burdens placed on taxpayers who receive different kinds of income. * * * [S. Rept. 91-522 (1969), 1969-3 C.B. 423, 495.]

As a result, section 56, the corporate minimum tax provision (see page 90 *supra*), was added to the Code to impose an additional tax on specific items of tax preference, as defined under section 57, so as "to reduce the advantages derived from these preferences and to make sure that those receiving such preferences also pay a share of the tax burden." S. Rept. 91-522 (1969), 1969-3 C.B. 423, 495.

Not unexpectedly, Congress targeted as an item of tax preference the benefit received by a corporate taxpayer by paying, under section 1201(a), a lower rate of tax on its

capital gain income than it would otherwise pay under section 11, and thus the statutory formula of section 57(a)(9)(B) was enacted. The formula is described in the Senate Finance Committee report, as follows:

In the case of corporations, the tax preference is the excess of the net long-term capital gain over the net short-term capital loss, multiplied by a ratio in which the denominator is the regular corporate rate (48 percent) and the numerator is the regular rate minus the rate applicable to capital gains in the case of corporations (28¾ percent in 1970 and 30 percent thereafter). In other words, the corporate capital gains are included among the tax preferences in the *ratio of the difference between their special rate and the general corporate tax rate to the general corporate tax rate*. Thus, after 1970 ⅜ of a corporation's net long-term capital gain will be treated as a tax preference (48%—30% ÷ 48%). [S. Rept. 91-522 (1969), 1969-3 C.B. 423, 497. Emphasis added.]

It appears that, with respect to section 57(a)(9)(B), Congress intended to apply the minimum tax only on what it considered to be the capital gain *preference*, i.e., reduction of taxes, realized by a corporate taxpayer with respect to its capital gain income due to the *difference in the regular and capital gain tax rates*. Thus, the statutory formula found in section 57(a)(9)(B) makes no allowance for tax credits, for they have no bearing on the amount of *benefit* or *preference* a corporate taxpayer receives by utilizing the lower tax rate found in section 1201(a).

We reject petitioner's interpretation of respondent's regulation. To accept petitioner's view would require us to consider tax credits in applying the alternative formula which would lead to a result seemingly inconsistent with the statutory language and clearly inconsistent with congressional intent. On the other hand, by adopting respondent's interpretation—

The ambiguity in the regulations can be eliminated and the regulations can be upheld by following the congressional intent underlying the statute. Where there is an interpretation of an ambiguous regulation which is reasonable and consistent with the statute, that interpretation is to be preferred. [*United Telecommunications, Inc. v. Commissioner*, 589 F.2d 1383, 1390 (10th Cir. 1978), affg. 67 T.C. 760 (1977).]

To do otherwise, would confer a benefit on petitioner and other similarly situated taxpayers, which was not congressionally intended.

Moreover, a closer look at the regulation itself, focusing especially on the specific examples found therein, reveals that respondent did not intend to change the scope of the statute or reduce the amount of minimum tax a corporation was to pay on the actual benefit it received from computing its tax for capital gain under section 1201(a). To the contrary, it is readily apparent that respondent's sole motivation in providing an alternative to the statutory formula was to insure that corporate taxpayers were not unfairly taxed on an item of tax preference where the full benefit of the preference was not received due to circumstances not contemplated by Congress at the time section 57(a)(9)(B) was enacted.[12]

The regulation states that the alternative formula was made available only because *"In certain cases the amount of the net section 1201 gain which results in preferential treatment will be less than the amount determined by application of the statutory formula."* Sec. 1.57-1(i)(2)(i), Income Tax Regs. (Emphasis added.) As a guide to explaining the types of inequities to be remedied by the promulgation of this formula, the regulation details specifically in its examples two situations in which a corporate taxpayer does not fully benefit from the rate differential between section 11 and section 1201(a), and thus is unfairly burdened by the imposition of a minimum tax based solely on the existence of such a differential.[13] While we recognize that use of the

---

[12]Respondent's intent was discussed by John S. Nolan, Deputy Assistant Secretary for Tax Policy of the Treasury, in a speech given at the University of Pennsylvania Annual Tax Conference in 1970, in which he stated that respondent's "principal concern" in writing the regulations covering the minimum tax provisions as enacted by the Tax Reform Act of 1969, was to "devise rules to deal with situations where no tax benefit is actually derived from tax preference items." 33 J. Tax. 370, 372 (1970).

[13]The two situations discussed in the regulation's examples deal with (1) the effect of offsetting operating losses, and (2) the fact that the corporate surtax rate exemption, which in prior years operated to lower the maximum corporate rate and thus reduce the preference differential, was not factored into the statutory formula. As summarized by Mr. Nolan in the speech he gave at the University of Pennsylvania Annual Tax Conference, (see note 12, *supra*)—

"A similar problem [i.e., a situation in which it is inappropriate to apply the minimum tax because a specified item of tax preference generates no tax savings for that year] results from the statutory formula for determining the amount of the capital gains preference for corporations. The statutory formula is based on a comparison between the regular corporate income tax rate and the alternative corporate capital gains rate. In cases where a corporation has operated [sic] losses but nevertheless uses the alternative tax computation for capital gains, the statutory formula overstates the tax benefit derived by the corporation from treating the income as capital gain rather than ordinary income. A similar problem exists with respect to the surtax exemption; the statutory formula is based on a 48-percent rate without

alternative formula, by its terms, is applicable generally and not limited to only these two sets of circumstances, we think the regulatory language, especially when read in light of these examples, clearly reflects that respondent never intended that application of the alternative formula was to result in a reduction of a corporate taxpayer's preference amount (from what it would otherwise have been if computed under application of the statutory formula) in a situation, such as petitioner's, in which a corporation had in fact *benefited from preferential treatment with respect to the full amount of its 1201(a) gain.* Respondent sought only to provide a method by which all corporations would be equitably taxed, not to confer yet additional tax benefits on corporations;[14] a result which would not comport with the conceptual underpinnings of section 57(a)(9)(B) and the minimum tax.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

giving effect to the 22-percent rate. The Regulations will provide a modified formula which may be used by the taxpayer to determine the actual dollar amount of tax preference which would result in the tax savings obtained by the taxpayer from using the alternative capital gain tax rate. [33 J. Tax. 372 (1970).]"

[14]To avoid any possible inference to the contrary, we reemphasize that during the year in issue petitioner utilized the full amount of its $2,186,855 in tax credits as a one-time "payment" to reduce its gross tax liability.

