**PEPCOL MANUFACTURING CO., Petitioner–Appellee,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 92–9008.

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1993.

Amended Order Denying Rehearing and Suggestion for Rehearing In Banc May 19, 1994.

---

**1014**

Richard Farber, Atty., Tax Div. (Mary Frances Clark, Atty., Tax Div., with him on the brief), Dept. of Justice, Washington, DC for respondent-appellant.

Jay P. Tarshis, Dennis C. Waldon of Gottlieb and Schwartz, Chicago, IL, for petitioner-appellee.

Before McKAY, GOODWIN[1] and SEYMOUR, Circuit Judges.

1. Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by

GOODWIN, Circuit Judge.

The Commissioner of Internal Revenue appeals the decision by the Tax Court reversing the Commissioner's decision that Pepcol Manufacturing Co. ("Pepcol") had taken an unauthorized "energy" investment credit which resulted in a $138,340 income tax deficiency for the 1980 year. We review this question of statutory construction as a question of law, and reverse.

The appeal presents two questions: (1) whether taxpayer's specialized manufacturing equipment qualifies as "recycling equipment" under I.R.C. section 48($l$)(6); and (2) The effect of a Treasury Regulation that excludes equipment used to recycle "animal waste" from eligibility for an energy tax credit as "recovery equipment."

I.R.C. Section 46(a)(2), at all times material in this case, allowed a 10 percent tax credit for investment in "energy property." Under I.R.C. section 48($l$)(6)(A), energy property includes "recycling equipment," which is equipment used exclusively to sort and prepare solid waste for recycling, or in the recycling of solid waste. The word "recycle" is not defined in the Internal Revenue Code. The section has since been repealed.

Pepcol is in the business of processing animal bones which it obtains from beef packing plants. Pepcol's primary product from this operation is gelatin bone, which is sold to the photographic industry for use as a coating on photographic papers. Although Pepcol pays the beef packers for the bones, the parties stipulated that the bones are a waste product.

Pepcol constructed its bone processing facility in 1979 to take advantage of significant changes in the way beef was being produced, processed, and marketed as a result of the arrival of large "boxed beef" fabricators in the Denver area. Boxed-beef is meat that has been cut from the bone, trimmed, and packaged for sale to the retail consumer, all at one facility. A steady supply of beef bones provided an opportunity to use the raw

designation.

material in the extraction of a valuable by-product.

On its tax return for 1980, Pepcol claimed an "energy property" investment tax credit in the amount of $156,969 for its bone-processing facility. (The Commissioner disallowed only the special 48 "energy property" investment credit for Pepcol's bone-processing facility. Pepcol was allowed the regular investment tax credit for that equipment in the amounts claimed on its 1980 tax return.)

The Commissioner, in disallowing the credit, held that Pepcol was not entitled to the credit because Treasury Regulation section 1.48–9(g)(1) excludes equipment used to recycle "animal waste" from eligibility as "recovery equipment,"[2] and Pepcol's system processed animal bones, which the parties stipulated constituted "animal waste."

The Commissioner further determined that Pepcol's facility does not "recycle" solid waste, but instead, further processes that waste by extracting from it a new raw material. The Commissioner likened the activity to the making of valuable leather products from animal skins produced in the preparation of beef.

In the Commissioner's view, recycling of solid waste takes place only where solid waste is turned into a raw material that then can be used to fabricate an end product that is the same as, or essentially similar to, the product that generated the waste in the first place. The classic example is making new paper products out of used newsprint. The Commissioner contends that this requirement is in keeping with the "true, technical" meaning of the word recycle. Thus, animal waste, unlike glass or newspaper, inherently is incapable of being recycled into the same or a similar end product.

Accordingly, the Commissioner based the deficiency ruling on two grounds: The processing of beef bones into gelatin is not recycling within the meaning of the statute, and if that ground is not sufficient, the matter is controlled by the plain language of the regulation which excludes animal waste from the energy credit.

The Tax Court, sitting en banc, reversed, holding that Pepcol was entitled to the tax credit. 98 T.C. 127, 1992 WL 17457 (1992) (en banc). The court used a two-step analysis. First, it found that Treas.Reg. section 1.48–9(g) was inconsistent with Congressional intent, and thus, was invalid to the extent that it excluded equipment used to process "animal waste" from the definition of "recycling equipment" eligible for investment tax credits. In the majority's view, the Commissioner's same-or-similar end product view of recycling was unduly narrow and not in accord with Congress' intent. 98 T.C. No. 11, 1992 WL 17457. Second, the Tax Court determined that Pepcol's bone-processing system did, in fact, recycle waste within the meaning of the statute.

### Validity of Treas.Reg. 1.48–9(g)

This Court has held that Treasury regulations are generally presumed to be valid and "are not to be invalidated except for weighty reasons." *United Telecommunications, Inc. v. Commissioner,* 589 F.2d 1383, 1387 (10th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979). The "presumption of validity is even greater" where regulations have been issued pursuant to a specific legislative authorization. *Id.; see also Kramertown Co. v. Commissioner,* 488 F.2d 728, 730 (5th Cir.1974). In the case of investment tax credits, Congress has given the Treasury Department legislative authority under I.R.C. section 38(b) to issue regulations covering investment tax credits. *United Telecommunications,* 589 F.2d at 1387.

The role of the judiciary in reviewing Treasury regulations "begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967).

---

**2.** Treasury Reg. section 1.48 9(g) distinguishes two types of "recycling equipment," namely, "recovery equipment" and "conversion equipment." Recovery equipment is the type of equipment described in I.R.C. section 48(*l*)(6)(A), under which Pepcol seeks a credit for its bone processing equipment, while conversion equipment is referred to in I.R.C. section 48(*l*)(6)(D).

Treas.Reg. section 1.48.9(g) expressly provides that equipment used to process animal waste does not qualify as recycling equipment, with the exception of equipment that transforms animal waste into fuel or other useful forms of energy. Treas.Reg. 1.48.9(g) was issued under the authority contained in I.R.C. sections 7805(a) and 38(b).[3]

We find that the Commissioner's concept of recycling is not unreasonable or plainly inconsistent with Congress' intent in enacting section 48(l). There is nothing in the legislative history that establishes that the Treasury's interpretation of the term "recycle" as requiring a true cyclical process is contrary to Congress' intent in employing the term. In fact, the Senate Report on the bill mentions four resource recovery activities that would qualify for the credit: paper recycling, bottle recycling, metal recycling, and textile recycling. S.Rep. No. 95–529, 95th Cong., 1st Sess. at 83 (1978–3 C.B. (Vol. 2) at 275). In each instance, the waste is processed so that it can be used in lieu of the raw material from which the original product was made. As the dissenting judges in the Tax Court below pointed out, the fact that "the legislative history lists end-product examples *only* is clearly sufficient to support a reasonable inference that Congress intended an end-product requirement." *Id.* at 25.

In addition, the policy goals that underlie I.R.C. § 48(l)(6)(A) support the Commissioner's position. The overriding purpose of the energy tax credit was to encourage investment in property that reduced the demand for foreign energy sources. *See* S.R.Rep. No. 95–529, 95th Cong., 1st Sess. 3, 80–81 (1978–3 C.B. (Vol. 2) 205, 272–73). The purpose of the statute was to provide an incentive to save energy, not to deal with the solid waste disposal problem. Although we agree that reducing the burden on our nation's landfills by reducing solid waste is a laudatory goal, it was not the purpose of this energy tax credit.

In this circumstance, where the Treasury's interpretation of the statutory language plainly is a permissible one, the Tax Court was required to defer to that interpretation. *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979). Since the position taken in the regulation is neither unreasonable, nor inconsistent with the statute, the Tax Court was constrained to follow it and erred as a matter of law in failing to do so. *See Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045–46, 67 L.Ed.2d 140 (1981); etc. We reverse the Tax Court's decision invalidating Treas.Reg. 1.48.9(g).[3]

We further hold that, because the animal bones involved in Pepcol's bone-processing system constitute animal waste within the meaning of the statute, Pepcol is not entitled to an energy tax credit under the regulation.

For these reasons, the judgment of the Tax Court is REVERSED.

SEYMOUR, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion in this case. I would affirm on the basis of the tax court's opinion.

As the majority recognizes, when the Treasury is given a specific grant of authority to promulgate regulations, there is a strong presumption in favor of the validity of those regulations. *See United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982); *Commissioner v. Portland Cement Co. of Utah,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045–46, 67 L.Ed.2d 140 (1981). Regulations are invalid, however, if they are unreasonable or plainly inconsistent with the Code itself. *See Bingler v. Johnson,* 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969).

Other circuits have struck down Treasury regulations that made exceptions to classifications contained in the Code without author-

---

**3.** Pepcol argues that the regulation is internally inconsistent because it provides an investment tax credit for equipment used to convert animal waste into useful forms of energy, whereas equipment used to process animal waste into other marketable products is not eligible for the credit. We find no inconsistency here. Although animal waste is not capable of being recycled under the technical definition of the term, animal waste is capable of being converted into fuel or other useful forms of energy.

ity from the Code itself. *See, e.g., Iglesias v. United States,* 848 F.2d 362, 367 (2d Cir. 1988) (Treasury regulation altering scope of statute by excluding prejudgment interest from taxable income a nullity); *Goodson–Todman Enterprises, Ltd. v. Commissioner,* 784 F.2d 66, 76–77 (2d Cir.1986) (Treasury regulation defining all game show tapes as "topical or transitory" held unreasonable for excluding the tapes as a class from investment tax credits otherwise available under Code); *Cosby v. United States,* 795 F.2d 999 (Fed.Cir.1986) (holding same regulations invalid).

As the majority recognizes, the reason animal waste is excluded from the definition of recovery recycling in Treasury Regulation 1.48–9(g) is because the Treasury has interpreted the term "recycle" to require the end product recovered to be one that is usable in the same manner as the original material processed. This reasoning is flawed for two reasons. First, had the Commissioner actually used this definition of recycle across the board, more than just animal waste would have to be excluded from the "solid waste" permitted to be recycled. For example, as the tax court noted, "there would be few, if any, agricultural products which could be recycled.... Clearly, animal parts cannot be recovered to produce a cow, nut shells to produce nuts, pea pods to produce peas, or corn husks to produce corn." *Pepcol Manufacturing Co., v. Commissioner,* 98 T.C. 127, 135–36, 1992 WL 17457 (1992). It is unreasonable for the Commissioner to exclude only animal waste from the category of solid waste by claiming to be following a definition of recycle which would exclude other types of waste as well.

In addition, the Supreme Court has stated that when Congress does not specifically define a term, revenue laws should be interpreted in accordance with common understanding and experience. *Helvering v. Horst,* 311 U.S. 112, 118, 61 S.Ct. 144, 147–48, 85 L.Ed. 75 (1940); *Addison v. Holly Hill Fruit Products,* 322 U.S. 607, 618, 64 S.Ct. 1215, 1221–22, 88 L.Ed. 1488 (1944). We

have also held that the failure of Congress to define a term strongly suggests that its traditional and well-established meaning should be used. *Estate of Greshem v. Commissioner,* 752 F.2d 518, 522 (10th Cir.1985) (where Code did not define the term "fair market value," Treasury regulation that defined it differently from traditional sense was invalid). The ordinary meaning of the word recycle is much broader than the Commissioner's narrow definition. One court which reached the same conclusion as the tax court in the instant case stated:

> [T]he common usage of the word "recycling" envisions a process whereby items that have no other economic use in their present form are transformed into valuable, usable products. It makes no difference whether paper is recycled to create more paper or whether disposable diapers are recycled to create plastic chairs—both processes constitute "recycling."

*Griffin Industries, Inc. v. United States,* 27 Fed.Cl. 183, 190 (1992). Consequently, even if the Commissioner did properly exclude animal waste from the definition of recovery recycling in Treasury Regulation 1.48–9(g) based on an end-use definition of recycling, I am convinced the definition used is contrary to the common use of the term and is thus unreasonable.

Before SEYMOUR, Chief Judge, GOODWIN * and McKAY, Circuit Judges.

## AMENDED ORDER

Because amendments to this court's opinion filed December 29, 1993, 13 F.3d 355, were omitted from the March 31, 1994, unpublished order denying rehearing and rehearing in banc, the court, upon its own motion, recalls the mandate and amends that order to read as follows:

This matter comes on for consideration of appellee's petition for rehearing and suggestion for rehearing in banc.

Upon consideration whereof, the court's opinion is amended as follows: [Editor's

---

* The Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by

designation.

Note: Amendments incorporated for purposes of publication].

The opinion having been so amended, the petition is denied by the panel that rendered the decision sought to be reheard. Judge Seymour voted to grant rehearing.

In accordance with Rule 35(b), Federal Rules of Appellate Procedure, the suggestion for rehearing in banc was transmitted to all of the judges of the court who are in regular active service. No member of the panel and no judge in regular active service on the court having requested that the court be polled on rehearing in banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing in banc is denied.

Because this order includes amendments to the court's opinion filed December 29, 1993, the order is published.